LOUISE ELMHORST and KATIE DREISSIGACKER, as Executrices, etc., of MARY FINT, Deceased, Appellants, *v.* JACOB MAZIROFF and Others, Defendants, Impleaded with THOMAS H. HEFFRON and CHARLES FIDLER, Respondents.

Second Department, December 8, 1916.

Mortgage — rights and duties of mortgagee after forged assignment of mortgage by attorney — estoppel.

Where a holder of a mortgage delivers the same to her attorney so that he may pay a tax thereon, and he, without her knowledge, forges an assignment of the mortgage which is subsequently transferred for value, she, upon discovering the forged assignment, is not bound in duty toward possible purchasers to notify the assignee or the owner of the equity.

Nor is she bound to bring an action to cancel the record of the assignment or to watch for succeeding records of assignment lest some one should

purchase, and unapprised of the forgery, should lose opportunity to collect of his assignor the money paid for the mortgage.

To create an estoppel *in pais* there must be both duty and opportunity to speak, and one is not penalized for silence lest some one should come forth and purchase to his loss.

The owner of such a mortgage is entitled to recover the amount due thereon, with interest up to the date of her discovery of the forgery, but having since said date allowed the owner of the equity to pay interest to one claiming title under the forged assignment in ignorance of the forgery, she is estopped from collecting the same from the owner of the equity, where she could not have been ignorant of the fact that said owner was making payments to somebody claiming under the forged indorsement.

APPEAL by the plaintiffs, Louise Élmhorst and another, as executrices, from a judgment of the Supreme Court in favor of the respondents, entered in the office of the clerk of the county of Kings on the 21st day of March, 1916, upon the decision of the court after a trial at the Kings County Special Term.

*Andrew C. Morgan,* for the appellants.

*Frederick N. Van Zandt* [*Joseph A. Burdeau* and *Reuben L. Haskell* with him on the brief], for the respondent Thomas H. Heffron.

*Simon Berg,* for the respondent Charles Fidler.

THOMAS, J.:

Mrs. Fint, who died November 14, 1907, owned a bond and mortgage given by Maziroff upon purchasing land. He conveyed to Fidler on June 11, 1906. Roehr, Fint's lawyer, obtained the bond and mortgage upon the pretense of paying a tax on it, and assigned it to Remsen, forging Fint's mark, and, as a notary public, certifying to a false acknowledgment on July 24, 1906. The assignment was recorded July 31, 1906. Remsen paid nothing, but took the bond and mortgage with other assignments to the end that he, Roehr, and Montgomery, might turn them over to the Montauk Brewing Company, of which Roehr became president and Remsen secretary. For money advanced the securities were assigned to defendant Heffron on October 17, 1906. Mrs. Fint learned in April, 1907,

that Roehr had absconded, and in May, 1907, of the record of the assignment of the mortgage to Remsen, and, of course, she then knew that the assignment was a forgery. Her daughters and executrices had similar knowledge. They put the matter in the hands of a lawyer, and upon discovery of his errancy, another lawyer was retained, but nothing was done until this action was begun, March 10, 1915. Interest was received on November 2, 1906, through Roehr. The next interest day was May 1, 1907, but no one went to look after it, save that a daughter visited Roehr's office, where it was discovered that he had gone. But May 1, 1907, was an important day. Not only was the interest then due, but $1,500 of the principal was payable, and the same was paid on April 30, 1907, to Heffron by Fidler. I cannot discover an act done or effort made to bring the matter home to anybody interested until this action was begun, and Heffron, as found, did not know of the forgery before the fall of 1914. Meantime, Fidler paid the interest to Heffron, and the brewing company went out of business, leaving Heffron without recourse. The appellants' contention is that such passivity was plaintiffs' privilege; that neither Mrs. Fint nor her plaintiffs owed any duty to Fidler to prevent payment to Heffron, or to Heffron so that he could look to the brewing company. The evidence does not seem to show that Fint or her daughters discovered the forgery in time to avert the payments of May 1, 1907, to Heffron, but the owners had full knowledge of the forgery and could have warned Fidler against the payment of interest subsequent to that date. The first question is whether the plaintiffs' nonaction, such as it was, precludes plaintiffs as to Heffron, who lost his recourse to the brewery company. Heffron relied upon the forged assignments and not on the silence of the owners or their failure to disclaim the authority of Roehr; but had the owners declared the forgery, Heffron might have been convinced of it and pursued the then existing and responsible brewing company. If, now, a mortgagee learns of a forged assignment of her securities and takes no steps to notify the assignee or even the owner of the equity, does she thereby affirm the forged assignment? Remsen was not a real purchaser. She owed him no duty. But he was potent to sell to an

innocent person. What duty did she owe to somebody who might so purchase from him, the brewing company as it resulted? She could not apprehend what disposition Remsen would make of the property or to whom. She knew in May, 1907, of the record of the assignment to Remsen. Did her duty prompt her to some litigation or notification or proclamation, lest somebody should buy of Remsen? The law cast no such duty on the owner. Indeed, it was impracticable unless notice were given to Fidler. How could he have averted purchase from Remsen, unless perchance the brewing company or Heffron had come to him to make inquiry before purchasing. But that is quite too remote. I discover no judicial suggestion that the owner of a mortgage delivered by an agent, holding it for other purpose, but forging an assignment of it, should consider that a purchaser would be apt to consult the owner of the equity, and that, in duty towards all possible purchasers, the owner should advise the owner of the land. I am not now discussing whether a duty is owing to the landowner. Neither was it the duty of the plaintiffs to bring an action to cancel the record of the assignment, or to watch for succeeding records of assignments lest some one, like Heffron, should purchase, and, unapprised of the forgery, should lose opportunity to collect of his assignor the money paid for the assignment. Heffron, neither as one of the mass of men who might buy, nor as the actual purchaser, could demand that the owner of the stolen bond and mortgage should identify him, and, having discovered, should inform him of the forgery, to the end that, if so inclined, he could collect a claim against his assignor. If that duty was owing the brewing company, if it was owing Heffron, it was owing to all others who might purchase. To what unending publication of the wrong and to what continuing warnings were the plaintiffs compelled? What private research was imposed upon the victim of the forgery lest some person should purchase from Remsen, or should suffer from such purchase? Fint and her daughters knew that Roehr had set the securities afloat and that they were subjects of repeated transfers. But the papers were not negotiable instruments, and no title could be traced through the forged assignment. I do not find when the plaintiffs learned

that Heffron had purchased the securities, or the relation of that date to the dissolution of the brewing company, but whenever it was the plaintiffs were not moved to save him from loss.   To create estoppel *in pais* there must be both duty and opportunity to speak, and one is not penalized for silence towards the world at large lest someone should come forth .and purchase to his loss.   The hazard is his, not that of one from whom the stolen property was taken.   The decisions may be noted.   It is not pretended that the title can rest on the forged assignment of the bond and mortgages (*Nash* v. *Moore*, 165 App. Div. 67), or that the record of the forged assignment helps the purchaser.  (*Marden* v. *Dorthy*, 160 N. Y. 39.)   Therefore, Heffron would find an available estoppel *in pais* in the long time silence of the plaintiffs concerning their misfortune.   But passivity by persons in plaintiffs' situation is not legal laches.   The victim may remain speechless and at rest unless asked to affirm or to deny, when failure to speak may be equivalent to an affirmation of the transaction.   In *Rothschild* v. *Title Guarantee & Trust Co.* (204 N. Y. 458, 462) a woman discovered a year later than the event that her son had forged her name to a bond and mortgage.  The court decided that silence with knowledge did not estop her from impeaching the act, but that two payments of interest by her did.   The court said: " Her silence instigated no action and caused no wrong. A fraudulent purpose or a fraudulent result lies at the basis of the doctrine of equitable estoppel through silence or inaction." It may be added that negligence may be an equivalent to fraud. (*Trenton Banking Co.* v. *Duncan*, 86 N. Y. 221.)   In the case at bar Heffron did not buy the mortgage induced by the owner's silence.   He purchased it before she had knowledge that it was negotiated by forgery.   If she had spoken later and he had believed her, he could attempt to recover of the brewing company.   But that would be extrication from a difficulty, not an inducement to it.   The plaintiffs were not required to minimize his damage.   In *Leather Manufacturers' Bank* v. *Morgan* (117 U. S. 96) a depositor failed to examine his pass book and vouchers.   There was a privity between him and the bank which created the duty of examining the vouchers which

the debtor took at the time of payment and on which it relied. The return of them to the depositor was in the nature of an accounting which forbade acquiescence if they were fraudulent. There is no similar relation in the case at bar. In *Thompson* v. *Simpson* (128 N. Y. 270, 291) it was said: " The owner of property which another has assumed to convey without authority is not precluded by mere silence from subsequently claiming it. There must in addition have been both an occasion and a duty to speak, and it must appear that the omission to speak, upon opportunity being presented, was intentional or in negligent disregard of the plain dictates of conscience and justice. It is not necessary that the duty to speak should arise out of any agreement, or rest upon any legal obligation in the ordinary sense. Courts of equity apply to the case the principles of natural justice, and wherever these require disclosure they raise the duty and bind the conscience and base upon the omission an equitable forfeiture to the extent necessary to the protection of the innocent party. The mere fact that another may act to his prejudice, if the true state of things is not disclosed, does not render silence culpable, and mere inaction in such a case is not sufficient." In *Viele* v. *Judson* (82 N. Y. 32, 40), after citation of cases, the court said: " These cases, and those of similar character, have been recently reviewed in this court and do not need a detailed examination. In all of them the silence operated as a fraud and actually itself misled. In all there was both the specific opportunity and apparent duty to speak. And, in all, the party maintaining silence knew that some one was relying upon that silence, and either acting or about to act as he would not have done had the truth been told. These elements are essential to create a duty to speak." It does not fall within such judicial expression to decide that a person whose property has been stolen must be alert to fend the public from purchasing, or to save a purchaser from the harm. I note that the district attorney investigated before the grand jury Roehr's transaction and procured and impounded the bond and mortgage. Heffron was subpœnaed before that body in May, 1908, to produce the papers. The district attorney kept the bond and mortgage, and Heffron seems never to have concerned himself to get them. In

November, 1908, the district attorney turned over the securities to Henschel, then plaintiffs' attorney, and he and his successor seem to have left the matter dormant awaiting the decision in *Nahe* v. *Bauer*, which passed through this court (151 App. Div. 922) and was affirmed in 211 New York, 511. Heffron disclaims any knowledge that his securities were suspected or involved, and seems not to have been disturbed by any suspicion which the district attorney had. But it is to be noted that he made no effort to acquire his papers from 1907 to 1915, and that if he knew of their return to the plaintiffs' lawyer in 1908, he abided by it. The plaintiffs omitted the bond and mortgage from the affidavit presenting the property subject to the succession tax, but there is no evidence that Heffron was misled by that. The balance due upon the mortgage should be paid to the plaintiffs as well as the $1,500 and interest due May 1, 1907. But the plaintiffs have allowed Fidler to pay the interest to Heffron since that day. They must have known that somebody was making collection, and yet they let it continue without dissent. Year by year from 1907, plaintiffs suffered Fidler to pay interest on his debt to another claiming title under a forged assignment. The plaintiffs did not see the payments made, but they could not have been unconscious that the owner of the land was making payments to somebody claiming under Remsen. Such interest, paid in ignorance of plaintiffs' claim, should not be collected from Fidler.

The judgment should be reversed, without costs in any court, and judgment entered for the plaintiffs in conformity to this opinion, and in favor of Fidler against Heffron for the moneys paid him on April 30, 1907, with interest on the sum of $1,500.

JENKS, P. J., CARR, RICH and PUTNAM, JJ., concurred.

Judgment reversed, without costs in any court, and judgment entered for the plaintiffs in conformity with opinion by THOMAS, J., and in favor of Fidler against Heffron for the moneys paid him on April 30, 1907, with interest on the sum of $1,500. Order to be settled before Mr. Justice THOMAS.