(112 App. Div. 464)

## LEFEVRE v. SILO.

(Supreme Court, Appellate Division, First Department.   April 20, 1906.)

**1. PARTNERSHIP—WHAT CONSTITUTES.**

An arrangement between defendant, deceased, and another to establish what was know as an "uptown" art gallery in New York City, under which each of the parties were to draw $2,000 per year, to be charged as an expense of the business, and that two-thirds of the profits should be distributed to defendant and the other third divided between deceased and the other party, constituted a partnership.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Partnership, §§ 15–28.]

**2. EVIDENCE—CONCLUSIONS—REBUTTAL.**

In an action on a partnership contract between deceased, defendant, and B., the latter's entire testimony concerning the contract was to his conclusion as to the result of a conversation at which all three were present, without attempting to testify to what was said. *Held*, that it was improper to sustain an objection to a question asked of defendant as to whether he entered into a contract with B. on or about the date in question, because it called for the witness' conclusion.

**3. WITNESSES—TRANSACTION WITH DECEASED PERSON.**

Where, in an action on a partnership contract alleged to have been made between deceased, defendant and B., the latter did not testify to anything that deceased had said at the interview at which the contract was made, except that he had acquiesced in a proposal made by defendant, to which B. also acquiesced, defendant was not precluded from denying the making of contract with B., similar to that testified to by him, by Code Civ. Proc. § 829, precluding a witness from testifying to a personal transaction had with a deceased person in an action by the latter's administrator.

**4. EVIDENCE—ADMISSIONS.**

Where, in an action on a partnership contract between decedent, defendant, and B., B. testified that under such contract decedent and B. were each to have one-sixth of the profits of a certain business, and that after decedent's death witness had left the business and obtained a final settlement with defendant, it was error to permit witness to testify that such settlement was on the basis that he was entitled to one-sixth of the profits as an admission by defendant to prove the original contract.

**5. SAME.**

In an action by an administrator on a partnership contract, I. O. U.'s produced by defendant and conceded to be in decedent's handwriting were competent evidence of the admission by decedent that he had received the sums of money mentioned and had promised to repay the same, in support of a counterclaim therefor.

Houghton, J., dissenting.

Appeal from Trial Term, New York County.

Action by Ellen A. Lefevre, as administratrix, etc., of the estate of Alfred M. Lefevre, deceased, against James P. Silo. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, he appeals. Reversed.

Argued before O'BRIEN, P. J., and INGRAHAM, McLAUGH-LIN, LAUGHLIN, and HOUGHTON, JJ.

J. Noble Hayes, for appellant.
William J. Martin, for respondent.

INGRAHAM, J.   The complaint alleges that in the month of September, 1898, the plaintiff's intestate and the defendant entered into an

agreement, terminable by either on 60 days' notice to the other, whereby it was agreed between them that the plaintiff's intestate should perform and render certain work, labor and services for the defendant in his business, known as "Fifth Avenue Art Gallery," in New York City, from and after October 1, 1898, and until May 1, 1903, unless sooner terminated by either, at an agreed compensation to be paid by defendant to plaintiff's intestate of one-sixth of the net profits of said business; that the plaintiff's intestate did perform and render to said Silo certain work, labor, and services from October 1, 1898, until on or about March 9, 1900, the date of his decease; that one-sixth of the net profits of the said business during the said period of time were at least the sum of $4,418.57, of which there was a balance due and payable from the defendant to the plaintiff of at least the sum of $2,140.50; and the complaint demands judgment for that amount. The defendant admitted the death of the plaintiff's intestate, denied the other allegations of the complaint, and set up a counterclaim for money loaned by the defendant to the plaintiff's intestate, amounting to $1,451.93, and demanded an affirmative judgment against the plaintiff. The court dismissed this counterclaim, and held that the plaintiff was entitled to recover, leaving it to the jury to determine the amount.

To prove the cause of action alleged in the complaint, the plaintiff called one O'Brien, who testified that he took part in an interview between himself, the defendant, and the plaintiff's intestate some time in October, 1899; that an arrangement was then made by which each of the parties should draw $2,000 a year, which should be an expense of the business, and that two-thirds of the profits was to go to the defendant, and the other one-third was to be divided between the plaintiff's intestate and the witness; that this agreement was not reduced to writing; that prior to this time the plaintiff's intestate had been an employé of the defendant at 43 Liberty street, and that this arrangement contemplated the leasing of an uptown store; that the plaintiff's intestate and the witness were to do the work incident to the gathering together and cataloguing and general details of the business, and the defendant was to do the selling; that this business would be started immediately on the securing of the lease, and it was started shortly after that. The witness was then asked: "When Mr. Silo said that he would take two-thirds and the other one-third to be divided between you two, was anything said by either of you or Mr. Lefevre in regard to that?" To which the witness answered: "It was understood that we were to get each one-sixth; divide that one-third equally between us. That was agreed upon by all three; yes. The words were: "The one-third is to be divided between you two boys.' Yes; one-third of the profits. The $2,000 annually was an expense of the business, which we were to draw for our living expenses, and was to be considered as an expense, charged to salary account." That he was subsequently present at a conversation in the uptown store between the plaintiff's intestate and the defendant. That "Mr. Silo came in one morning and said that— This was after the books had been balanced and the amount of profit for the preceding year determined. This was in either the latter part of September or the first part of October, 1899. Mr. Silo came into the office and said that the amount of the profits that would

be apportioned to us each would be one-eighth. Mr. Lefevre objected to that. Well, Mr. Silo said, that would be the amount that he was going to allow, no matter what he said, and if he did not like it he could do the other thing. Mr. Lefevre said: 'I will not take that or accept that as a settlement.' " That the nature of the business carried on as this store was a general auction business, selling goods on commission. That there was besides that a line of business consisting of the purchasing of goods and selling them, a sort of general merchandising in connection with the auction business. That it was further understood that on 60 days' notice from either one of the parties to the other the contract could be terminated. The witness further testified that from that time on the parties drew what money they wanted and left the question of settlement until the final accounting was had. It further appeared that the bookkeeper who kept the books of this business, in consequence of the instructions received from the defendant after this conversation between the plaintiff's intestate and the defendant, had divided the profits of the business by crediting one-eighth to O'Brien, one-eighth to plaintiff's intestate, and the other six-eighths to the defendant, and that this method proceeded without further objection by either of the parties down to the death of the plaintiff's intestate.

The first question arising is whether this was a copartnership, in which case an action at law could not be maintained for the amount due to either of those interested until an accounting had been had. This point was raised by the defendant when he made his motion to dismiss upon the ground that the action was a common-law action to recover for money due to the plaintiff's intestate as an employé. Just what is sufficient to constitute a copartnership is a question about which there has been considerable confusion; but the prevailing opinion now is that any contract by which the parties to the contract are entitled to share in the profits or business as owners thereof is a copartnership, rather than an employment. Thus it is said in Am. & Eng. Enc. of Law, vol. 22 (2d Ed.) p. 14:

"There are two essential elements present in every partnership: First, a contract between the partners; and, second, that the contract must be for the sharing as common owners of the profits of the business."

On page 27 it is said that the ultimate and conclusive test of partnership is simply co-ownership of the profits of a business; that, where the intention of the parties to a contract is to carry on a business and share the profits between them as common owners or joint proprietors of the business, such parties are partners. On page 24 it is said that, nothing appearing but the rendition of services and the sharing of profits, the presumption is that the parties are partners; and on page 41 it is said that proof merely of a sharing in the profits of a business raises a prima facie presumption of the existence of a copartnership, because the most natural inference, where nothing else appears, is that the persons sharing the profits do so because they jointly own them; that this presumption is not conclusive, but may be overthrown by proof of other circumstances showing that the profits are shared on some other basis than as common owners; but that, in the absence of any such explanation as to the basis upon which the profits are shared,

mere proof of profit sharing is sufficient to establish the fact of owner-ship.

In Leggett v. Hyde, 58 N. Y. 272, 17 Am. Rep. 244, it was held that the contribution by a party of a sum of money to a firm to be employed as capital in its business, by reason of which he was entitled to have and demand from it one-third of the profits of its business every half year, constituted him a partner; citing with approval what was said in Everett v. Coe, 5 Denio, 182: "If he is to be paid out of the profits made, then he has a direct interest in them." And the rule would be the same where the parties were to contribute those services to the joint enterprise.

The evidence of the agreement in this case is confined entirely to the statement of O'Brien of what he understood the arrangement to be. He nowhere gives the words that were used, the proposition made by the defendant, the answer of the plaintiff's intestate, or the witness. He says:

"I understand that the arrangement then to be all three will draw $2,000 a year each and that two-thirds of the profits go to me and the other one-third will be divided between both of you."

Again, when asked about the agreement, he said:

"It was understood that we were to get each one-sixth; divide that one-third equally between us. That was agreed upon by all three; yes. The words were: 'The one-third is to be divided between you two boys.' Yes; one-third of the profits."

Upon cross-examination he testified:

"To repeat what was said in relation to the divisions of the profits of the business, the profits were to be divided on the basis of two-thirds to Mr. Silo and the other third divided between Mr. Lefevre and myself, after we had each taken out $2,000 a piece for what I say I call expenses. This ar-rangement continued, I understand, until it expired with Mr. Lefevre's death. In my case it continued until the January 1st following."

The proposition was to establish a new business in an uptown store, to be conducted by the three persons who entered into this arrange-ment. No capital was contributed by either, and it did not appear that capital was necessary in the conduct of this business. There was simply a joint adventure by these three persons, the profits of the busi-ness to be divided between them; no question of employment of one by the other; nothing said, so far as appears, by which either one of the three was to have the management or control of the business. Nothing could be plainer from this testimony than that the business to be estab-lished was to be managed and controlled by the three contracting par-ties, who were each to have a proportion of the profits. There was every element of a copartnership interest in the profits as such, and a division of such profits among the contracting parties. I think, therefore, that the cause of action alleged in the complaint was not proved, and that the defendant was entitled to a dismissal of the com-plaint.

I also think that there was error committed in rulings upon evi-dence to which exceptions were taken which requires a reversal of the judgment. The evidence of the agreement which was made between the plaintiff's intestate, O'Brien, and the defendant was given by

O'Brien, one of the parties who was present at the interviews. After O'Brien had testified the defendant was called as a witness, and was asked: "Did you enter into a contract with Mr. Lefevre on or about in 1898, about September?" That was objected to, the objection was sustained, and an exception taken. He was then asked: "Did you enter into a contract with Mr. O'Brien on or about September 1, 1898?" That was objected to, "as Mr. Lefevre was present at it, and the proof already shown that, and if he took part in it, consequently he cannot testify to it at all, and it calls for a conclusion besides." That objection was sustained, and the defendant excepted.

As to the objection that this was a conclusion, in view of the form that the testimony of O'Brien had taken, it should not have been sustained. O'Brien's whole testimony had been that an arrangement was made. He had not testified as to what was said by the defendant, what was said by the plaintiff's intestate, or by himself. All of his testimony would have been subject to an objection that he was not testifying as to what was said, but as to his conclusion; but when it came to rebutting his testimony, it being nothing but his understanding of the result of a conversation, I do not see how it could have been controverted, except by a denial that such a contract had been made as he testified to. The plaintiff had adopted the method of proving a case by the testimony of O'Brien's conclusion as to the result of a conversation at which he was present, and it certainly was not incompetent to call another party to that conversation and allow him to testify that no such arrangement as testified to by O'Brien had in fact been made. It was the plaintiff's adopting this method of proving the agreement that rendered it competent for the defendant to meet that testimony by a denial of the making of such an agreement.

Nor do I think that this testimony was incompetent under section 829 of the Code of Civil Procedure. O'Brien had not testified to anything that the plaintiff's intestate had said at that interview, except that he had acquiesced in the proposal made by the defendant. O'Brien had testified that he had also acquiesced in such an agreement and that under that agreement the business had been carried on. If it was competent for the plaintiff to prove that O'Brien had acquiesced in that agreement, and the agreement had become thus complete, under which the business was to be carried on, it was certainly competent for the defendant to deny that such an arrangement had been made between himself and O'Brien. Whether the plaintiff's intestate took part in the conversation seems to me immaterial. What the Code makes incompetent is a personal transaction between the witness and a deceased person; and this question did not purport to ask the result of any personal transactions between the defendant and the plaintiff's intestate. What the defendant had a right to do was to deny O'Brien's testimony as to the arrangement that he had made with O'Brien, and it was for the jury to say whether the defendant's or O'Brien's testimony was to be believed.

As to this refusal to allow the defendant to contradict O'Brien's testimony, attention should be called to the testimony of O'Brien that was allowed over the objection and exception of the defendant, which I also think incompetent, but which, if competent, certainly made it

competent for the defendant to deny his agreement with O'Brien. O'Brien, at the instance of the plaintiff, was allowed to testify that he left the business about January 1, 1901, after the death of plaintiff's intestate, and that a final settlement was had about that time. This was objected to by the defendant as immaterial and irrelevant, when counsel for the plaintiff said:

"It is evidence offered to prove that this witness received his one-sixth and thus to show that the other man—to sustain our claim. It is some evidence of the agreement and of the rights of the parties. It is offered for that purpose."

The question was then repeated, and counsel for the defendant said, "I wish to except on the ground that it is immaterial and irrelevant,": to which the court replied, "You may except if you think that that was immaterial and irrelevant." O'Brien was then asked whether up to this time there had been any change in the agreement that each should receive one-sixth as testified to. This was objected to as incompetent, immaterial, and irrelevant. The objection was overruled, to which there was an exception. He was then asked to state what conversation took place at that time, to which counsel for the defendant objected. This objection was overruled, and the defendant excepted; the court saying, "I will allow it on the question of this original contract." The witness was then allowed to testify that, after he discontinued connection with the business, he figured that upon the basis of one-sixth he was entitled to $1,050; that he was offered $1,000 by the defendant, and accepted that sum in settlement; that this amount figured on a one-sixth basis. Here the court allowed a settlement made with O'Brien after the plaintiff's intestate's death, by which O'Brien was paid his percentage of the business, calculated upon his right to receive one-sixth of the profits. It was received by the court as having relation to the original contract by which he was to receive one-sixth of the profits. It could only be evidence of an admission by the defendant that he had made a contract with O'Brien by which O'Brien was to receive one-sixth of the profits, and that, as the plaintiff's intestate was to receive the same that O'Brien was to receive, it was evidence of an admission by the defendant that the plaintiff's intestate was to receive one-sixth of the profits. This certainly made a question as to the agreement made between the defendant and O'Brien, and it was then certainly competent for the defendant to testify that he had no contract with O'Brien as to one-sixth of the profits, and that therefore this settlement with O'Brien, whatever it was, was not an admission that the contract allowed to O'Brien and the plaintiff's intestate one-sixth of the profits. It can easily be seen how important this testimony, that in the absence of any denial by the defendant that his contract with O'Brien was for one-sixth of the profits, was with the jury. I think, therefore, that this testimony of O'Brien was incompetent, but that, if for any reason it could be held to be competent, it was error to refuse to allow the defendant to deny that he had any contract with O'Brien by which he was entitled to one-sixth of the profits, or had made any settlement with him based upon such a contract.

There is one other question as to which I think the learned trial judge fell into error. The answer set up a counterclaim for money loaned by the defendant to the plaintiff's intestate. In support of this counterclaim he offered in evidence certain writings which it was conceded were in the handwriting of the plaintiff's intestate. These consisted of 103 separate instruments, which were dated in the years 1896 and 1897. They were for varying amounts, 15 of which were as follows:

"I. O. U. thirteen dollars.

"July 24/97.
A. M. Lefevre."

The court seems to have at first admitted these in evidence, and afterwards, upon reconsideration, excluded them, and then dismissed the counterclaim. The papers were produced by the defendant, were conceded to be in the handwriting of the plaintiff's intestate, and I think they were competent evidence of an admission by the intestate that he had received the sums of money mentioned and had promised to repay the same. In the absence of some evidence to whom they were delivered, or by whom they were received from the plaintiff's intestate, it may be that, standing alone, they were not competent evidence to prove the counterclaim; but I think they were admissible evidence. But, as the judgment must be reversed for the other errors stated, it is not necessary to further consider these instruments, as upon the new trial they may be so connected as to remove any question as to their legal effect.

It follows that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

O'BRIEN, P. J., and McLAUGHLIN, J., concur.

LAUGHLIN, J. I concur with Judge INGRAHAM in all excepting that I am of opinion that the court properly precluded defendant from testifying concerning the contract alleged to have been made at an interview between the decedent, the witness O'Brien, and the defendant; but I think defendant should have been permitted to deny the subsequent settlement with O'Brien on the basis thereof.

HOUGHTON, J. (dissenting). I cannot concur in the reasons advanced for reversing this judgment. I do not interpret the evidence as showing that O'Brien and defendant and the plaintiff's intestate, as between themselves, entered into a copartnership agreement. The defendant called as a witness his own bookkeeper, Anthony, and he testified that the defendant told him that plaintiff's intestate and O'Brien were coming to work for him, and that they were to receive a salary of $40 per week and a portion of the profits at the end of the year. The defendant was sworn as a witness in his own behalf, and, while it was perfectly competent for him to say that his bookkeeper was mistaken, and that he made no such declaration to him, he did not so testify, and said nothing upon the subject. The controversy on the trial was whether O'Brien and plaintiff's intestate were to have one-

sixth each of the profits, as claimed by plaintiff, or only one-eighth each, as claimed and admitted by defendant.

There is a wide difference between a partnership as against third persons and one inter sese. The case of Leggett v. Hyde, 58 N. Y. 272, 17 Am. Rep. 244, cited as authority in the prevailing opinion, deals with the question as to whether the parties had made themselves partners as to third persons only, and expressly recognizes the rule that a partnership may exist as to such third persons, and not as between the contracting parties themselves. That one may be employed and remunerated by a share of the profits, in lieu of or in addition to a stated salary, without becoming a partner as between himself and his employer, has been frequently held, and is not disputed. The conditions under which no partnership exists as between the parties themselves, and frequently even as against third parties, are illustrated by the cases of Smith v. Bodine, 74 N. Y. 30, Richardson v. Hughitt, 76 N. Y. 55, 32 Am. Rep. 267, Cassidy v. Hall, 97 N. Y. 159, Bickford v. Searles, 9 App. Div. 158, 41 N. Y. Supp. 148, and Merchants' Nat. Bank v. Barnes, 32 App. Div. 92, 52 N. Y. Supp. 786. Indeed, the practice of adding to a servant's salary a portion of the profits of the business, even in large enterprises, is quite common, and is very properly supposed to exert a salutary effect in stimulating activity in and devotion to the employer's interests. The rule of law should not be so narrowed as to make a servant so paid in whole or in part a general partner in the business itself, with rights of general accounting, aside from such profits as he may have an interest in, and with right to termination of the business and the placing of it in the hands of a receiver.

Nor do I think there was any error in excluding the testimony of defendant as to whether he made any such contract with O'Brien as had been testified to by him. Assuming the question to be proper in form, and not plainly calling for a conclusion as to what the arrangement was, the defendant could not testify, because, if it was material at all, it manifestly called for a personal transaction between the defendant himself and plaintiff's intestate. O'Brien testified that at one time and in one conversation the defendant made a bargain with himself and the deceased to pay each of them $40 per week for their services, and, in addition, one-sixth of the net profits of the business. The bargain between defendant and O'Brien was not material, except as it involved one made in the same conversation in behalf of the deceased. Surely the defendant could not testify against the plaintiff administratrix—if the question was properly objected to as calling for a personal transaction between himself and the dead man—that he made no such bargain, or what the bargain actually was. That a living witness, who was present and heard the bargain, had given his version of what took place, did not open the door for the defendant to testify on the same subject. If this were so, section 829 of the Code of Civil Procedure would be a nullity; for the estate of a deceased person can only prove a verbal contract by some witness who was present, and the calling of that witness should not and does not permit the party himself to testify and give his version of what took place. Under the situation presented, O'Brien's contract being interwoven with that of the deceased, and made by the same conversation, to permit the defendant

to testify that he had made no such bargain as O'Brien had testified he did would be in direct violation of the provisions of the Code prohibiting a living party from testifying to transactions had with a deceased person whose representatives are seeking to enforce an obligation against him. If O'Brien's contract was not connected with that of the deceased, then the testimony excluded was immaterial. If it was material, then it involved the contract made with the deceased, and defendant's testimony was properly excluded.

With respect to the so-called "I. O. U.'s" I do not think any error was committed in excluding them. The ground upon which the defendant's counsel claimed they were admissible, and that they proved his counterclaim, was that they were negotiable instruments. They were clearly not of such a character, and he should be held to the ground he took upon the trial with respect to them.

I think the judgment was right, and that no reversible error was committed.