Ross A. REYNOLDS, Respondent, *v.* ALICE SEARLE, Appellant.

Fourth Department, January 22, 1919.

**Partnership — essentials of contract — when partner estopped from denying liability — evidence.**

An indispensable essential of a contract of copartnership, either under the common-law rule or the statute, is a mutual promise or undertaking of the parties to share in the profits of the business, and submit to the burden of making good the losses.

One who permits himself to be held out as a partner, so that in reliance upon his credit debts are incurred, may not be heard to say as against creditors so deceived, that he is not a copartner.

In an action by a depositor to charge the defendant with liability for unpaid deposits made with a firm engaged in banking business, evidence *held* insufficient to establish that the defendant was to share in the profits and losses of the business or that the plaintiff became or remained a depositor upon the assumption or understanding that the defendant was a copartner or interested in any manner in the bank, and that the complaint should be dismissed.

APPEAL by the defendant, Alice Searle, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Ontario on the 31st day of July, 1918, upon the verdict of a jury, and also from an order entered in said clerk's office on the 3d day of August,

1918, denying defendant's motion for a new trial made upon the minutes.

*L. N. Southworth,* for the appellant.

*Earle S. Warner,* for the respondent.

LAMBERT, J.:

The complaint alleges that in 1879 the defendant and her brother, William B., and sister, Fannie T. Hotchkiss, formed a copartnership to conduct. a banking business at Phelps, N. Y., under the firm name of William B. Hotchkiss & Co.; that the copartnership thus formed then began doing banking business and thereafter continued until the said William B. Hotchkiss was adjudged a bankrupt in August, 1910; that between June, 1879, and August, 1910, the plaintiff became a depositor of the said bank, and upon the failure and bankruptcy of the said William B. Hotchkiss, the plaintiff had on deposit $778.88; that he filed a claim in the bankruptcy proceeding and received his *pro rata* share upon the distribution of the assets of the said William B. Hotchkiss; that there was a balance remaining unpaid after such distribution of $202.46; that upon the refusal of the defendant to pay such balance upon demand, this action was brought to enforce a recovery thereof against the defendant. The action is sought to be sustained under the allegation of copartnership upon the theory that defendant became a copartner in the banking business in 1879 and continued as such until the bankruptcy of William B. Hotchkiss and hence was liable for the copartnership debts including the one here involved. This is evidently a test case of the defendant's liabilities for the debts remaining of the banking copartnership of William B. Hotchkiss & Co.

The sole issue in the case is the copartnership. The jury has rendered a verdict against the defendant, and this appeal is from the judgment entered thereon.

An indispensable essential of a contract of copartnership, either under the common-law rule or the statute, is a mutual promise or undertaking of the parties to share in the profits of the business, and submit to the burden of making good the losses. *(Lefevre .v. Silo,* 112 App. Div. 464; *Rogers* v.

*Murray*, 110 N. Y. 658; Partnership Law [Gen. Laws, chap. 51; Laws of 1897, chap. 420], § 2; Partnership Law [Consol. Laws, chap. 39; Laws of 1909, chap. 44], § 2.)

To establish the contract of copartnership the plaintiff proved that on June 12, 1879, in a newspaper published at Phelps, N. Y., there was a notice inserted and published for six successive weeks, to the effect that William B., Fannie T. Hotchkiss and this defendant had engaged in the banking business as copartners under the name of William B. Hotchkiss & Co.; that a sign placed over the bank door during the entire period of business bore the name " Wm. B. Hotchkiss & Co.; " that the bank books bore like indorsements. The plaintiff further proved by reading in evidence a judgment roll granted in an action in which the defendant was a party, that some time before 1879 the mother of the defendants William B. and Fannie T. Hotchkiss died intestate, leaving an estate that was administered by Leman B. Hotchkiss, their father; that the defendant's father furnished as a capital for the beginning of the banking business of William B. Hotchkiss & Co. the sum of $6,157.44 of moneys belonging to the estate of the defendant's mother. It also appeared upon the trial that at the time the bank was established, in 1879, the defendant was a young girl, just above majority and lived at home with her father, brother and sister and so continued until her marriage to one Searle, in 1885, when she moved to Utica, N. Y., and has continued her residence there ever since. There is no evidence that the defendant assented to the publication of the notice above mentioned, except as it may be inferred that she must have seen and read the notice inasmuch as the paper was taken by the Hotchkiss family. On the contrary, it appears from the evidence of William B. Hotchkiss that the defendant was not consulted with respect to the publication of the notice or the loaning of the moneys from the estate of his mother, to his knowledge; that the publication was procured either by his father or himself; that he never had any negotiations with his sister, the defendant, to become a partner in the banking business at Phelps, N. Y.; that it satisfactorily appears that at no time had she manifested any pecuniary interest in the business of the bank. It is not made to appear that she was

a depositor, that she was ever seen behind the counters of the bank or that she ever drew a dividend or was otherwise interested. The proof is clear that the bank was run and solely managed by her brother, William B. Hotchkiss. There is a complete failure of proof upon the part of the plaintiff to establish a contract relation between the two sisters and their brother, William B., to become partners in the banking business in 1879. The most that could be claimed, conceding the defendant published or authorized the publication of the printed notice in 1879, would be holding herself out to the public as a copartner in the banking business. That relation imposes quite a different obligation from that resulting from an actual copartnership. To prove an actual partnership it was essential for the plaintiff to go farther and prove that the defendant was to share in the profits and losses of the banking business. This burden he has not borne. On the contrary, if we are to take the evidence of William B. Hotchkiss as entitled to credit, the contrary appears. In fact, the surrounding circumstances demonstrate the truthfulness of the evidence of William B. There is no evidence in this case disclosing that the defendant knew of the loaning of the money coming from her mother's estate by her father, as administrator, to William B. Hotchkiss & Co. for the purpose of starting the bank. So far as the evidence goes, the first she knew of it was when she was sued, with others, by the assignees of her father's estate charging the loan as a disbursement in 1880. She appeared and answered in that action, consenting to allow as a credit to the administrator her proportion of that estate that went into the bank. This concession does not justify the inference that she became a partner in the banking business with her brother and sister in 1879. There is a failure of proof, both directly and circumstantially, to prove the actual copartnership upon which the plaintiff's right of action is founded.

There is a class of cases where, for the benefit of creditors, a partnership is held to exist upon the doctrine of estoppel. One who permits himself to be held out as a partner, so that in reliance upon his credit debts are incurred may not be heard to say as against creditors so deceived that he is not a copartner. There is no proof in this case that the plaintiff

became or remained a depositor upon the assumption or understanding that the defendant was a copartner or interested in any manner in the bank. The plaintiff did not become a depositor until the year 1905, some twenty-six years after the formation of the banking business. The defendant had ceased to be a resident of Phelps for ten years before the relationship of the plaintiff began with the bank. He stated as a witness that he never saw her at the bank except on few occasions, and then on the patrons' side of the bank counter. He does not state that he understood or had even heard that she was a member of the banking copartnership. There was a complete failure of proof to establish the cause of action alleged in the complaint, and it appearing that all the evidence was given that is available upon the issue presented, the motion of the defendant for a direction of a verdict in favor of the defendant should have been granted.

The judgment and order should, therefore, be reversed, with costs, and the complaint dismissed, with costs.

All concurred.

Judgment and order reversed, with costs, and this court having determined that the trial court should have granted the defendant's motion for the direction of a verdict, the complaint is dismissed, with costs.