THE HARTFORD ACCIDENT AND INDEMNITY COMPANY, Plaintiff, *v.* WILBUR S. OLES and DANIEL FRANKLIN, Copartners, Doing Business under the Name and Style of W. S. OLES & COMPANY, Defendants.

Supreme Court, Delaware County, August 1, 1934.

*Donald H. Grant*, for the plaintiff.

*Charles C. Flaesch [Livingston S. Latham* of counsel], for defendant Daniel Franklin.

McNaught, J. An insurance agency under the name W. S. Oles & Company was conducted in the village of Delhi, Delaware county, from about June, 1919, until December, 1931. On or about the 28th day of January, 1921, the plaintiff entered into an agency agreement with the defendant Oles which was signed " Wilbur S. Oles & Co. By W. S. Oles." The agency represented numerous fire, accident and indemnity insurance companies. In the year 1931 the agency, having become heavily involved financially, ceased to do business and was sold to one Stoddart on or about November 25, 1931.

It is conceded that at the time the agency ceased to do business and was transferred to Stoddart, it was indebted to the plaintiff for premiums collected in the sum of $4,010.20. It has been stipulated that in the event plaintiff is entitled to recover, it is entitled to recover such sum, with interest from the 28th day of September, 1932.

The action is brought against the defendants Oles and Franklin as alleged copartners under the name and style of W. S. Oles & Company. The defendant Oles has defaulted. The defendant Franklin has appeared and answered. Two causes of action were stated in the complaint, one in conversion, and one upon contract. The conversion action was withdrawn. At the opening of the trial plaintiff's counsel stated they sought to recover on an account stated, not on the ground of conversion. and would confine themselves to a contract action.

It is not contended, nor is there any evidence to support a claim there was an actual partnership agreement between the defendants. A partnership arises from contract, express or implied. If denied, it may be proved by the production of some written instrument, by testimony as to some conversation, by circumstantial evidence, or by proof of the receipt by the defendant of a share of the profits

of the business. Only those who are partners between themselves may be charged for partnership debts by others. (Partnership Law, § 11; *Martin* v. *Peyton*, 246 N. Y. 213, 217.)

An indispensable essential of a contract of partnership, either under the common law, or the statute, is a mutual promise or undertaking of the members to share in the profits of the business and submit to the burden of making good the losses. (*Reynolds* v. *Searle*, 186 App. Div. 202, 203.)

There is one exception to the general rule stated. Under certain conditions a recovery may be allowed against a defendant where in truth the partnership relation is absent. This is because of the circumstances the alleged debtor may not deny the claim and is based upon estoppel. (Partnership Law, § 27; *Martin* v. *Peyton, supra.*) In substance, the statute provides that when a person by spoken or written words, or by conduct, represents himself, or consents to another representing him as a partner, he is liable to any person to whom the representation has been made who has on the faith of it given credit to the actual or apparent partnership, and if the representation or consent to its being made has been in a public manner, he is liable to the person who has extended credit, whether the representation was communicated to such person extending credit or not. This statutory enactment is but a reiteration of what has long been the law. It is based upon the doctrine of estoppel. When estoppel is sought to be enforced in a case of this character it may be classified as an equitable estoppel or estoppel *in pais*, a term which is applied to a situation where, because of something which he has done or omitted to do, a party is denied the right to plead or prove an otherwise important fact. Courts from an early day have been disposed to consider the rule a harsh one. It was and still is a somewhat common expression, that "estoppels are odious." "An estoppel *in pais* is a moral question. It can only exist where the party is attempting to do that which casuists would decide to be a wrong; something which is against good conscience and honest dealing." (*Delaplaine* v. *Hitchcock*, 6 Hill, 14, 17.)

Estoppel *in pais* is applicable only where the conduct or words of the party estopped are intended, or are of such character that under the circumstances shown they will be presumed to have been intended to influence the other party to act thereon, and did in fact so influence him. (*Viele* v. *Judson*, 82 N. Y. 32; *Trenton Banking Co.* v. *Duncan*, 86 id. 221; *Brandt* v. *Virginia Coal & I. Co.*, 93 U. S. 326, 335; *Henshaw* v. *Bissell*, 18 Wall. [U. S.] 255, 271.)

To constitute an equitable estoppel there must have been some act or admission by the parties sought to be estopped inconsistent

with the claim he now makes and done or made with the intention of influencing the conduct of another, which he had reason to believe would, and which did in fact, have that effect. Silence will not estop unless there is not only a right but a duty to speak. (*New York Rubber Co.* v. *Rothery*, 107 N. Y. 310; *Klapp* v. *Bache*, 229 App. Div. 415, 418.) The doctrine is to be strictly guarded and carefully applied and only when the grounds for its application are clearly and satisfactorily established. (*Trenton Banking Co.* v. *Duncan, supra; Thompson* v. *Simpson*, 128 N. Y. 270, 292.)

Mere silence or failure to object does not preclude a defendant unless he knew or ought to have known that his silence would be relied upon, acted upon, and that some injury would result. Mere reticence does not establish estoppel in the absence of any act tending to mislead, unless there is an apparent duty to speak, and the silence might operate as a fraud and is actually misleading. A fraudulent purpose or result lies at the basis of estoppel through silence or inaction which arises only when the omission to speak is an actual or constructive fraud. (*Rothschild* v. *Title Guarantee & Trust Co.*, 204 N. Y. 458, 462; *Thompson* v. *Simpson, supra; Viele* v. *Judson, supra; N. Y. Rubber Co.* v. *Rothery, supra*.)

Where fraud is not expressly proven, estoppel cannot be based on acts or conduct consistent with an honest purpose and absence of intent. (*Standard Sanitary Mfg. Co.* v. *Arrott*, 135 Fed. 750.)

Where the evidence is equally capable of an honest or dishonest interpretation, the court must adopt the former in preference to the latter. (*Lopez* v. *Campbell*, 163 N. Y. 340; *Specht* v. *Waterbury Co.*, 208 id. 374; *Digelormo* v. *Weil*, 260 id. 192, 200.)

The liability attaches to one who holds himself out, or knowingly allows another to hold him out, as a partner. Any act, representation or conduct on the part of a person responsible calculated to induce the belief that he is a partner, constitutes a holding out. (*Conklin* v. *Barton*, 43 Barb. 435.) The act or representation, however, must be that of the party sought to be charged, or with his knowledge.

Persons not partners *inter se* can be subjected to liability because of a holding out only when the person seeking to hold them to liability dealt with the ostensible partnership in the belief that the parties were partners. (*Cassidy* v. *Hall*, 97 N. Y. 159; *Reynolds* v. *Searle, supra*.) It must appear that plaintiff was injured or influenced by the omission, word or act of the defendant. If plaintiff relied solely on the statement of another, such statement would in no wise be binding upon the defendant without proof either of authority therefor, or that it was made with the knowledge of the defendant. (*Elmhorst* v. *Maziroff*, 176 App. Div. 145, 149.)

A plaintiff who never considered defendant liable, except as an afterthought when recovery from his original debtor necessarily failed because of insolvency, cannot create a retroactive estoppel. The cause must precede the result. Representation or conduct relied on must be concurrent with or prior to the action they are alleged to have influenced. (*McMaster* v. *Pres., etc., Ins. Co. of N. Am.,* 55 N. Y. 222, 229; *Hamlin* v. *Sears,* 82 id. 327; *Garlinghouse* v. *Whitwell,* 51 Barb. 208; 21 C. J. § 133, pp. 1132, 1133.)

Applying these established principles to the case at bar, do the facts establish that the defendant Franklin, by words spoken or written, or by conduct, represented himself as a partner of the defendant Oles under the name W. S. Oles & Company? Did the defendant Franklin hold himself out to the plaintiff as a partner? Has it been established that there was a representation by Oles to the effect Franklin was a partner made with Franklin's knowledge or consent? Was there a course of conduct in reference to the business of the insurance agency on the part of the defendant Franklin which estops him in this action from denying liability to the plaintiff?

Answers to the foregoing interrogatories must necessarily be based upon the facts established by the evidence, and are decisive of the issue between the parties.

In June, 1919, the defendant Franklin had an office and resided in the village of Delhi. He was interested extensively in the creamery business, and was one of the substantial business men of the community. The defendant Oles, after graduating from Cornell University in 1916, was in the service during the World War, and after his discharge returned to Delhi. He was about to marry the niece of the defendant Franklin. As the result of conversations between Franklin and Oles relative to the future business activity of Oles, negotiations were entered into with the firm of F. G. Thomson & Co., who were engaged in the insurance business, to sell the fire insurance portion of their business to the defendant Oles. The fire insurance agency was sold by Thomson & Co., the consideration being $1,000, and the same was paid by the check of the defendant Daniel Franklin on or about June 1, 1919. The offices of Franklin and Thomson & Co. were in the same building and adjoined. There was a door between the offices. The fire insurance business which had been sold by Thomson & Co. was conducted from their old offices. The defendant Oles was in charge of the business. Shortly thereafter the defendant Franklin moved to the city of Oneonta, where he has since continued to reside. The insurance business was continued under the management and direction of Oles and under the name " W. S. Oles & Company."

Since the conclusion of the trial it has been stipulated by the attorneys, as a part of the record, that the defendant Franklin carried the sum of $1,000 paid by him to Thomson & Co. for the purchase of the insurance agency in the year 1919 upon his books as a loan to the defendant Oles and continued so to carry it for several years, the exact length of time not being specified.

Agency contracts were signed by Oles, " W. S. Oles & Co. By W. S. Oles," and recited in the body thereof, particularly in the case at bar, that W. S. Oles & Company was a copartnership composed of the defendants. Oles from year to year made application to the State Insurance Department for an agent's certificate of authority, and therein stated that W. S. Oles & Company was a copartnership consisting of the two defendants. There is no evidence that such agency agreements were signed, or such applications to the Insurance Department were made with the knowledge or consent of the defendant Franklin, and he specifically denies any knowledge of such applications, or the signing of such agreements.

Aside from the agency agreements and the applications for certificates of authority to act as insurance agents or brokers, plaintiff relies upon testimony as to three alleged statements of the defendant Franklin.

The first statement relied upon is based on the testimony of the witness Jessup, who testified that in June, 1919, as a special agent of the American Eagle Indemnity Company, at about the time of the transfer of the insurance business of Thomson & Co., he was present in the office of Franklin, and stated in substance that he was surprised to know that Franklin was going into the insurance business, and that Franklin replied, " My connection with the agency will do it no harm." This conversation is denied by the defendant Franklin.

Plaintiff then relies upon two statements claimed to have been made twelve years later, contending from the testimony of various witnesses that representatives of several companies, after the agency became involved in financial difficulties in November, 1931, visited Franklin in the city of Oneonta, advised him of the financial condition of the agency, and that there was an opportunity to sell it to Stoddart, and that Franklin said, " Boys, I think you better sell it."

Plaintiff also presented the testimony of witnesses to the effect that a short time afterwards, at a meeting of representatives of the various companies in the Hotel Oneonta, Franklin was present and arrangements for collection of the accounts due the agency were discussed, and that Franklin called in Attorney Farone in connection with arranging to take over the matter of the collections. The witness Quigg testified regarding the second meeting to the

effect that accompanied by the witnesses Jessup and Hurley and also one Meeker who was not sworn as a witness, Quigg told the defendant Franklin that the agency had been sold for $6,000, leaving a deficit of $7,000, " and that we were going to hold him as a partner in that agency," and that the defendant Franklin at that time said " he did not know whether I could, or not."

The case is devoid of any proof that at any time Franklin represented himself as a partner of Oles in the insurance business, other than as above outlined. There is no evidence whatever that Franklin knew that Oles had represented he was a partner at the time of signing the various agency agreements, or at the time of the several applications to the Insurance Department. There is no proof other than the instrument itself, tending to establish that this plaintiff relied upon, or that it was represented to it, when it entered into the agency agreement dated January 28, 1921, that Franklin was a partner of the defendant Oles. The witness Jessup did not represent the plaintiff in this action at the time of his alleged conversation with Franklin in June, 1919. He was at that time a representative of the American Eagle Insurance Company. It does not appear that any officer, special agent or representative of the plaintiff, between the date of the purchase of the agency and the date of the agreement with plaintiff, had any conversation with Franklin, or that any representation was made to any such officer, agent or representative relative to Franklin's connection with the business.

Entirely aside from the question of veracity as to the conversation in 1919, testified to by the witness Jessup, and denied by the defendant Franklin, even if such conversation occurred it would be a strained construction of the language used to say that it was a representation or an acknowledgment or admission that Franklin was a partner in the business which he had purchased for Oles. The relationship which existed between the parties, the interest the defendant Franklin naturally had in the welfare and the business success of the young man who was about to marry his niece, the fact that Franklin had extensive business interests and carried large amounts of insurance, the proximity of the offices, and the fact the business would be transacted from the same building in which his offices were located, and in an office adjoining and connecting with his, might well justify the statement " connection would do no harm," but is far from conclusive as an admission or holding out of partnership.

Aside from the agreements and the applications to the Insurance Department, the record is barren of proof that from 1919 until November, 1931, any one connected with this plaintiff or any other

insurance company represented by the agency, were informed or advised that Franklin was connected with the business in any manner whatever. The testimony to the effect that Franklin advised selling the agency after being informed as to the financial conditions; that he assisted in obtaining an attorney to collect the accounts, or that he said in the presence of various witnesses in substance, when advised by Quigg they were going to hold him as a partner, that he did not know as they could do that, fall far short of establishing a holding out or representation of partnership. Such facts, if held to be established, are also subject to the rule heretofore stated that the representation or conduct relied on must be concurrent with, or prior to the action they are alleged to have influenced, and subsequent acts or knowledge have no bearing. Plaintiff cannot recover by considering the defendant as an afterthought when recovery from the defendant Oles has failed because of his insolvency. Plaintiff cannot create a retroactive estoppel.

There is no proof, and it is not contended by plaintiff, that an actual partnership existed. There was no partnership agreement, either written or oral. There is no claim that there was ever any conversations or understandings relative to a partnership.

Plaintiff, if entitled to recover at all, must recover solely under the provisions of section 27 of the Partnership Law, upon the ground the defendant Franklin is estopped by his acts and conduct from denying his liability as a partner. A careful review of the testimony in this case leads us to believe it falls far short from establishing the essential elements of partnership by estoppel and is insufficient to hold the defendant Franklin liable to plaintiff under the provisions of section 27 of the Partnership Law.

There are other persuasive facts which justify the conclusion reached, of which two of importance may be mentioned, viz.:

(1) When the insurance agency was sold to Stoddart, the sale and transfer were evidenced by a written instrument. The representatives of plaintiff and other insurance companies, from the testimony, must have been cognizant of such sale and transfer. The assignment was acknowledged by the defendant Oles on the 25th day of November, 1931. It recites: "That I, Wilbur S. Oles, sole owner and proprietor and doing business under the name of W. S. Oles & Co. of Delhi, N. Y., party of the first part, * * * do bargain, grant and convey to the said party of the second part, * * * my insurance agency, together with the good will, * * * together with all my rights in and to agencies with the different insurance companies, and I hereby agree to use my influence to have the insurance agencies which I represent transfer my agency to second party." (Exhibit 1.)

(2) During the years 1919 to 1931, inclusive, the period while the business of the insurance agency was conducted, the defendant Oles made and filed income tax returns, both State and Federal, in which returns the insurance business in its entirety was reported as the business of Oles individually.

We, therefore, conclude that plaintiff's complaint as to the defendant Franklin should be dismissed upon the merits, with costs.

Plaintiff is entitled to judgment against the defendant Oles in the sum of $4,010.20, with interest from September 28, 1932, with costs.

Submit findings and judgment accordingly.