Peter Hammond, Plaintiff

against
Bruce W. Smith, Defendant


2008/02441

Harris Beach PLLC
Douglas A. Foss, Esq.
Attorneys for Plaintiff
Barclay Damon LLP
Mark T. Whitford, Jr., Esq.
Attorneys for Defendant


Matthew A. Rosenbaum, J.

Defendant, Bruce W. Smith, moves for an order pursuant to CPLR 3212 granting summary judgment finding that there was no partnership between the parties and dismissing the complaint.
This action was commenced in February 2008. Defendant answered in April 2008. By order dated June 30, 2008, the Court (Fisher, J.) granted Defendant's motion to dismiss Plaintiff's fourth cause of action alleging fraud and seeking punitive damages.
The parties then engaged in discovery. In March 2014, Defendant moved for partial summary judgment, seeking a limited finding that the alleged partnership between the parties, if one existed, was terminated no later than August 5, 2005. This motion was unopposed, and a [*2]consent order was entered to this effect in August 2014. Despite Plaintiff's contentions, the effect of this order was not an acknowledgment that a partnership was formed by the parties. The order specifically and unambiguously stated that the motion sought a finding that the "purported partnership between Plaintiff and Defendant, if one existed at all, terminated no later than August 5, 2005." Affirmation of Mark T. Whitford, Jr. dated March 25, 2016, Exhibit F.
This action stems from dealings between the parties in 2004 and 2005. At issue is whether a partnership existed between the parties. Trial in this matter is scheduled to commence on May 2, 2016.
Plaintiff's Complaint alleges that in March 2004, Defendant sought to involve Plaintiff in a business venture known as Amphibian Systems, for the design and production of immersion litho tools for sale to prospective purchasers. Complaint, ¶3. It is alleged that Defendant sought Plaintiff's knowledge and expertise and the resources and reputation of Plaintiff's company, Lightforce Technology, Inc. Id. at ¶4. It is alleged that Plaintiff had several areas of expertise to offer and that Plaintiff added credibility to Amphibian Systems due to his experience in the field. Id. at ¶¶5-6. According to Plaintiff, Defendant, a college professor, felt that he lacked credibility to proceed with the project alone. Id. at ¶8.
It is alleged that "[f]rom the outset, Defendant Smith sought to involve Plaintiff in a common venture as a partner." Id. at ¶10. Plaintiff states that he immediately began making contributions by applying his design expertise to the project and by traveling to remote locations to facilitate customer relationships and promote the venture. Id. at ¶11. Plaintiff states that the parties referred to themselves as partners through the summer and fall of 2005 and discussed a need to memorialize their agreement in writing. Id. at ¶12. It is alleged that the parties were crafting a business plan for their joint involvement in the project by September 2004. Id. at ¶13. It is also alleged that the parties agreed to equal ownership of the venture and a split of the profits. Id. at ¶15. Plaintiff alleges that he worked without compensation from March 2004 through October 2004. Id. at ¶18. At the return date of this motion, Plaintiff's counsel presented evidence that Plaintiff worked on the project as early as July, 2004.
The parties met with counsel, Tom Fitzgerald, Esq., in October 2004 to discuss the joint venture. Id. at ¶20. It is alleged that the parties expressed their desire to have equal interests in the partnership and to implement the business plan they had been forming. Id. at ¶21. Following a subsequent meeting with counsel, it is alleged that Plaintiff advised that he believed he should have a 20% interest in the partnership, not an equal interest. Id. at ¶24. Plaintiff states that Defendant agreed. Id. at ¶25. At Special Term, Plaintiff's counsel indicated that Plaintiff voluntarily reduced his interest in the partnership to 20% as an acknowledgment that Defendant was contributing more to the partnership than Plaintiff.
Between November 2004 and October 2005, it is alleged that Defendant repeatedly stated that he was seeking to have counsel reduce their agreement to writing. Id. at ¶26. In reliance on that, Plaintiff alleges he continued to advance products and services for the partnership's benefit without mark up and continued to bear expenses for which he was either untimely reimbursed or not reimbursed. Id. at ¶30. Plaintiff further alleges that he advanced certain services to the partnership at a minimal rate agreed to pending profitability of the partnership. Id. at ¶31.
Plaintiff states that his efforts resulted in an orders that have paid significant sums of money to the partnership, in excess of $6,000,000. Id. at ¶¶32-41. Plaintiff seeks his portion of [*3]the profit from those sales.
Defendant notes that he developed the XIS Immersion Microstepper System and received his first order for a system from a customer in 2004, prior to Plaintiff's involvement with the project. Defendant has researched and presented extensively on the issue of excimer laser lithography since the early 1990's. Defendant also states that he was open to a partnership, or other alternatives, including retaining Lightforce Technology, Inc. to help build tools for Defendant and his company. Despite being open to such possibilities, Defendants states that the parties never actually formed a partnership or otherwise came to a resolution on the definition of their relationship.
The Complaint states three causes of action: (1) breach of the partnership seeking, seeking dissolution and a accounting; (2) breach of fiduciary duties; and (3) breach of contract, alleging failure to pay Plaintiff the agreed share.
A party seeking summary judgment "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact." Alvarez v. Prospect Hosp., 68 NY2d 320, 324 (1986). "Failure to make such a prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers." Id. See also, Qlisanr, LLC v. Hollis Park Manor Nursing Home, Inc., 51 AD3d 651, 652 (2d Dept. 2008). "Once this showing has been made, however, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action." Alvarez, 68 NY2d at 324 , citing Zuckerman v. City of New York, 49 NY2d 557, 562 (1980).
At issue on this motion for summary judgment is whether the parties reached an enforceable partnership agreement. If this inquiry is answered in the negative, as Defendant hopes, the Complaint will be dismissed. For the reasons that follow, it is the Court's determination that no partnership existed between the parties to this action. 
" A partnership is an association of two or more persons to carry on as co-owners a business for profit.' " Czernicki v. Lawniczak, 74 AD3d 1121, 1124 (2d Dept. 2010), quoting NY Partnership Law, §10(1). " An indispensable essential of a contract or partnership or joint venture, both under common law and statutory law, is a mutual promise or undertaking of the parties to share in the profits of the business and submit to the burden of making good the losses.' " Steinbeck v. Gerosa, 4 NY2d 302, 317 (1958), quoting Reynolds v. Searle, 186 App. Div. 202, 203 (4th Dept. 1919). The Court of Appeals has stated:
Partnership results from a contract, express or implied. If denied it may be proved by the production of some written instrument; by testimony as to some conversation; by circumstantial evidence. If nothing else appears the receipt by the Defendant of a share of the profits of the business is enough.
Martin v. Peyton, 246 NY 213, 217 (1927). The Fourth Department has provided the following instruction:
In deciding whether a partnership exists, "the factors to be considered are the intent of the parties (express or implied), whether there was joint control and management of the business, whether there was a sharing of the profits as well as a sharing of the losses, and whether there was a combination of property, skill or knowledge."
[*4]Kyle v. Brenton, 184 AD2d 1036 (4th Dept. 1992). See also, Brodsky v. Stadlen, 138 AD2d 662 (2nd Dept. 1988). Where there is no written agreement, a court must ascertain "whether a partnership in fact existed from the conduct, intention, and relationship between the parties." Id. at 663. "While the existence of partnership ultimately depends upon the individuals' intent, the name they give their agreement is not dispositive." Bailey v. Broder, 1998 WL 13827, *1 (S.D.NY 1998). Even "[a]n agreement to distribute the proceeds of an enterprise upon a percentage basis does not give rise to a joint venture if the enterprise does not represent a joinder of property, skills, and risks." Steinbeck, 4 NY2d at 317. "No one factor is determinative; it is necessary to examine the parties' relationship as a whole." Kyle, 184 AD2d at 1037.
"The fact that the parties held themselves out as partners is not decisive; calling an organization a partnership does not make it one.'" Kyle, 184 AD2d at 1036. "It should be noted that calling an organization a partnership does not make it one." Brodsky, 138 AD2d at 663. Rather, " [t]he ultimate inquiry is whether the parties have so joined their property, interests, skills and risks that for the purpose of the particular adventure their respective contributions have become as one and the commingled property and interests of the parties have thereby been made subject to each of the associates on the trust and inducement that each would act for their benefit.'" Steinbeck, 4 NY2d at 317, quoting Hasday v. Barocas, 10 Misc 2d 22, 28 (NY Co. 1952).
Here, Defendant presents to the Court prima facie proof that the parties herein never came to a meeting of the minds as to a partnership. The parties did not share profits, did not share losses, did not jointly own partnership assets, did not jointly manage and control the project, did not share joint liability to creditors, and did not jointly contribute capital to the project. The parties' general interest in creating a partnership does not equate to the actual creation of a partnership where the parties never came to a meeting of the minds and did not agree upon the terms and form of their relationship. 
Sharing Losses
In making this motion, Defendant contends there was never any agreement, or even a discussion, between the parties to share losses. It is alleged that Plaintiff was not liable for any expenses related to the project, did not contribute capital to cover expenses, did not loan money to the project, was not liable to creditors, and did not enter into any contracts with third parties. Rather, it is alleged that Defendant alone assumed the risks of any losses. Defendant alleges that if the project had failed he alone would have borne the losses.
In opposition, Plaintiff alleges that there was an agreement to share losses because the parties orally agreed to a 50/50 partnership (which was subsequently voluntarily revised to 80/20 by Plaintiff). Plaintiff states that the partnership division was intended for profits and losses. Indeed, Plaintiff states:
In proceeding as 50-50 partners, I understood that we would share profits and losses equally if we ever succeeded in developing a marketable product.
Affidavit of Peter Hammond, at ¶17. Noticeably absent from Plaintiff's allegations is any indication that Defendant agreed to the initial 50/50 or revised 80/20 split.
The Court disagrees with Plaintiff. As discussed in greater detail infra, Defendant presents prima facie evidence that the parties never had an agreement to be 50/50 or 80/20 partners and never agreed to share losses, and Plaintiff's opposition does not raise a question of [*5]fact in any respect. Plaintiff's statement in his affidavit that he understood they would share profits and losses equally if the product was successful does not demonstrate an embracement of potential loss. By Plaintiff's own statement, he was in for 50-50 sharing in the event of a profit, but not in the event that the project did not turn a profit. There is no evidence before the Court that Plaintiff "had skin in the game" and was at risk of losing anything in the event the project was not successful, and Plaintiff did not incur liabilities to get the project underway.
Defendant, on the other hand, was at risk of financial loss it the project failed: he had loaned the company money, he took out lines of credit for which he was personally responsible, and he had contractually agreed to reimburse payments made by customers if the systems were not delivered as promised. The record before the Court lacks any indicia that the parties discussed reimbursement of Defendant for the losses incurred in the event the project failed. Plaintiff cannot even raise a question of fact as to whether he was reimbursed for work performed early on in the project because he did not keep records of the work he performed and did know which hours of work he subsequently invoiced Defendant for. Plaintiff has not laid bare any proof that there were invoices or expenses incurred by him that were not reimbursed by Defendant. 
Moreover, the value of Plaintiff's services to the project is not evidence of shared losses. See Steinbeck, 4 NY2d at 307; Milton Abeles, Inc. v. Creekstone Farms Premium Beef, LLC, 2010 WL 446042 (E.D.NY 2010).
Sharing Profits
Defendant further alleges that the parties did not have an agreement to share profits. The records reflects several allegations by Plaintiff as to the partnership split, with the final allegation in his deposition being that the split was 70/20/10 between Defendant, Plaintiff, and Anatoly Bourov, a non-party. While Plaintiff alleges in the Complaint and at his deposition (as a correction to earlier testimony stating that there was no discussion as to profit sharing) that the split was initially 50/50, in a letter dated January 4, 2007, Plaintiff states that at the outset of the project relationship he advised Defendant that a 20% equity interest would be reasonable. The record is replete with inconsistencies from Plaintiff on alleged profit sharing.
Plaintiff notes that Defendant sent a proposed partnership agreement to Plaintiff in September 2004. Indeed, Defendant did; Defendant sent several proposed agreements, stating that they might want to use those agreements as a framework to understand each others goals and needs. See Affidavit of Bruce W. Smith, Exhibit E. The unambiguous words used by the parties in their interactions reveals that the agreements sent to Plaintiff by Defendant were not meant to state the terms and conditions of a proposed agreement. Also of note is that Defendant followed up transmitting the partnership agreements with a further email stating that they should "keep open other ways to structure things," including contracting with Plaintiff's company to build tools for Defendant's company. Id. at Exhibit F. Clearly that this juncture, no relationship had been defined between the parties.
Even more telling are the comments made through the course of the parties relationship on this project that indicate that no agreement has been reached at any point. In a September 23, 2004 email Plaintiff states, "I think we need to nail down the key terms of our agreement ASAP." Affidavit of Bruce W. Smith, Exhibit D. Likewise, in the same email Plaintiff notes that their attorneys and advisors will help them reach an agreement. Id. In May, 2005, Plaintiff wrote to [*6]Defendant asking, "When can we finalize our business deal?" Id. at Exhibit L. Finally, on August 4, 2005, Plaintiff sent Defendant a proposed Stock Purchase Agreement. At his deposition, Plaintiff testified that the parties had never discussed pursuing a Stock Purchase Agreement but that his attorney had suggested it and he thought it was something the parties could work through. Affidavit of Mark T. Whitford, Jr., Esq., Exhibit D at 202-04. It is evidence that as of August, 2005, there was still no agreement between the parties. On August 5, 2005, the parties met and decided to part ways, though Plaintiff continued to seek resolution of their disagreement.
In his Affidavit submitted in opposition, Plaintiff notes that in June, 2004 Defendant did not counter his response that he would accept a 50% partnership interest with a different suggestion as to percentage. See Affidavit of Peter Hammond, ¶16. Rather, Plaintiff understood Defendant's silence as acceptance. Id. Defendant's silence does not mean there was an agreement to form a partnership. See, e.g., Wright v. Reusens, 66 Hun. 633 (2d Dept. 1892). Acceptance of an offer requires a clear and unequivocal response, and nothing in the record before the Court demonstrates that such a response was ever given. 
The overwhelming evidence demonstrates that the parties herein had not at any point reached an agreement as to partnership terms. There was no agreement or meeting of the minds on the partnership terms between the parties with respect to the material terms of their partnership. Defendant establishes prima facie entitlement to summary judgment on this issue. Plaintiff fails to raise an issue of fact.
Additional Hallmarks of Partnership
Defendant presents prima facie proof that it had complete and exclusive ownership of the assets associated with the project. Defendant business, LTC, was the sole licensee for the leased space from which the project was completed. Defendant further was responsible for the management and control of the business, including marketing, hiring employees, creating relationships with vendors and suppliers, and overseeing the build schedule for each tool. Defendant contends that there was no joint control over the project. Also, Defendant and his company were solely liable to all creditors. Defendant notes that Plaintiff could have walked away from the project- and did- without any liability to third parties. Plaintiff's opposition does not dispute the management and control issue and proffers no credible evidence to the contrary sufficient to raise a question of fact.
Defendant alone was liable for the company's financial obligations, including expenses, salaries, contracts, lease obligations, insurance premiums, credit facilities, credit card payments, and loans. Not only was Plaintiff not liable for such expenses, but he was reimbursed for some, if not all, of his expenses incurred related to the project. Again, due to admitted lack of bookkeeping, Plaintiff is unable to prove which, if any, expenses he was not reimbursed.
Defendant has sole and exclusive ownership of the assets used in furtherance of the project. Defendant owned the patent rights to the lens and naming rights to "Amphibian Systems." LTC was the sole licensee for the leased space, and the bank accounts are solely in the name of LTC. Plaintiff's opposition fails to raise a question of fact because he does not define what partnership assets, if any, he owns. Moreover, it is uncontroverted that Defendant alone made capital contributions to the project. Plaintiff did not make a capital contribution, and as noted supra, the work he performed for which he was allegedly not reimbursed does not give rise to a capital contribution in a partnership setting.
Finally, the uncontroverted proof demonstrates that the parties did not intend to form a partnership, but rather intended to focus on the project and structure their relationship along the way as their contributions to the project evolved. The plethora of communications between the parties compel the conclusion that a partnership, while discussed as an option, was never formed by the parties. Even if true, Plaintiff's allegations that Defendant referred to their relationship as a partnership, or to Plaintiff as partner, are irrelevant. See Brodsky, 138 AD2d at 663. Calling the relationship a partnership did not make the parties partners; their actions and communications with each other revealed that no such partnership ever existed. 
There was no partnership agreement between the parties. As of August, 2005, the parties' relationship was still undefined, and indeed, Plaintiff made a final effort at that juncture when he sent Defendant a proposed Stock Purchase Agreement. The most that ever existed between the parties was an agreement to work in furtherance of the project and to evaluate and reevaluate the structure of their relationship along the way. Those evaluation and reevaluations never resulted in a partnership agreement between the parties. There was no agreement to share profit or losses, the parties did not verbally agree to form a partnership, and the conduct and communications presented to the Court for determination on this motion for summary judgment establish unequivocally that there was no partnership between these parties,
Plaintiff fails to raise an issue of fact in opposition to Defendant's motion. Defendant has presented prima facie proof that there was no partnership between the parties. Plaintiff's submissions fail to create a triable issue.
Defendant's motion for summary judgment is granted.
Signed at Rochester, New York this 22nd day of April, 2016.
Matthew A. Rosenbaum
Supreme Court Justice