FOUR STAR CAPITAL CORPORATION,
Plaintiff,

v.

NYNEX CORPORATION, AGS Computers, Inc., d/b/a AGS Information Services, Inc., Derek Proctor, Defendants.

AGS Computers, Inc., Cross–Claimant,

v.

Derek Proctor, Cross–Defendant.

AGS Computer, Inc., Third
Party Claimant,

v.

Jan Orluck, Third Party Defendant.

No. 93 CV 8974(RLC).

United States District Court,
S.D. New York.

Sept. 25, 1997.

Scott D. Righthand, Of Counsel, Law Offices of Scott D. Righthand, San Francisco, CA, for plaintiff Four Star Capital Corporation.

Leonard J. Pugatch, Of Counsel, Tassan & Pugatch, Garden City, NY, for plaintiff Four Star Capital Corporation.

Stephen N. Hollman, Of Counsel, Arter & Hadden, San Francisco, CA, for defendant AGS Computers, Inc.

Richard Wagner, Of Counsel, Richard H. Wagner, White Plains, NY, for defendant NYNEX Corporation.

John E. Reilly, Of Counsel, John E. Reilly, New York City, for defendant NYNEX Corporation.

## *OPINION*

**ROBERT L. CARTER, District Judge.**

### I. *Background*

This diversity action arises from allegations of breach of contract and related torts by plaintiff, Four Star Capital Corporation ("Four Star"),[1] a California corporation, against defendants NYNEX Corporation ("NYNEX"), AGS Computers, Inc. d/b/a AGS Information Services, Inc. ("AGS"), an indirect subsidiary of NYNEX,[2] and Derek Proctor, an AGS employee. At the time of the events leading up to this action, Four Star was a broker for the sale and purchase of computers domestically and worldwide. Wilson ("Bill") Hendricks III was a partner with Four Star in the company's China operations. NYNEX is a Delaware corporation with its principal place of business in New York. AGS is a New York corporation. Both defendants are engaged in the business of developing, distributing, installing, and servicing computer hardware and software throughout the United States and worldwide.

This controversy originated with the allegedly unauthorized actions of an AGS employee, Derek Proctor, who entered into an oral and written partnership agreement[3] with Four Star as the purported agent and representative of NYNEX and AGS in China. The arrangement provided that Four Star would become the representative for NYNEX and AGS and would pursue projects with the Chinese government and with business interests in China, for which both defen-dants would supply products and services. An oral agreement to this effect allegedly operated between the parties from 1991 until or about May 31, 1992 when a written agreement was signed by Hendricks of Four Star Capital and Derek Proctor as "Vice President of International Consulting for NYNEX/AGS." A short time later, on July 10, 1992, Allen Pearl, Vice President and General Counsel for AGS sent Four Star a letter disavowing the alleged partnership and denying any responsibility to perform under the agreement. AGS further denied that Derek Proctor had had the authority to enter into the contract on AGS' behalf. (Pearl Letter, Pl.'s Exh. DD.)[4]

Plaintiff asserts that it performed under the oral agreement by formally introducing AGS and NYNEX representatives to key ministers within the Chinese government. (First Amended Complaint [hereinafter FAC], ¶ 8.) Among these officials was Liu Dan, a government representative responsible for negotiating telecommunications contracts on behalf of the Ministry of Machinery and Electronics Industry Company and the China Tongda Network System Corporation—government-owned utility companies—and other arms of the Chinese government. (*Id.*) . Following the execution of the written agreement, plaintiff avers that defendants solicited the business of the Chinese government representatives they had met through plaintiff, (*id.* ¶ 9), and expressed general interest in pursuing telecommunications ventures in China, (Decl. of Scott D. Righthand

1. Defendant AGS contends that the named plaintiff, Four Star Capital, is not the true party in interest in this case and moves to dismiss pursuant to Rule 17(a), F.R.Civ.P. *See infra,* Part II.

2. Until January 5, 1994, AGS was a wholly-owned subsidiary of NYNEX Worldwide Services Group, Inc., an affiliate of NYNEX. On that date, all AGS stock was sold to Keane, Inc. ("Keane"), a Massachusetts corporation with operations in Boston. On or about March 31, 1994, AGS was merged into Keane. Four Star now moves to join Keane as a party defendant. *See infra,* Part V.

3. The court's references to a "contract" or "agreement" throughout this opinion are for semantic purposes only and shall not be read as a determination regarding the validity of the alleged partnership agreement.

4. Plaintiff commenced this action in the Superior Court of California on December 31, 1992. That suit was subsequently removed to the United States District Court for the Northern District of California on February 1, 1993 where the action against co-defendant NYNEX was dismissed for lack of personal jurisdiction. Following the California dismissal, plaintiff filed a second suit against NYNEX in June, 1993 in the Southern District of New York. At plaintiff's request, the case pending against AGS in California was then transferred to the Southern District and, in April, 1994, was consolidated with the NYNEX suit to form the present cause of action. In January, 1997 the case was reassigned from Judge McKenna of the Southern District to this court.

[hereinafter Righthand Decl.], ¶ 2). In particular, plaintiff claims that defendants' formal introduction to Liu Dan culminated in a two-day meeting between Liu Dan and defendants in NYNEX's New York offices—including a tour of the NYNEX Science and Technology laboratory, (*id.*, Aronow Dep. at 513)—and a preliminary agreement for the design, sale, installation, and service of high-tech software and hardware to network a banking system among three cities in China. (Id.) According to plaintiff, this network was to be followed by another banking network within Shanghai, Canton, and Beijing.

On September 5, 1993, Judge McKenna issued a decision granting in part and denying in part a 12(b)(6) motion by NYNEX to dismiss the complaint.[5] *See Four Star Capital Corp. v. NYNEX Corp.*, No. 93 Civ. 3706, 1993 WL 350016 (S.D.N.Y.1993). Since this decision, the parties have filed a number of motions. Both NYNEX and AGS move for judgment on the pleadings pursuant to Rule 12(c), F.R.Civ.P. AGS moves in the alternative for summary judgment and to dismiss the first amended complaint on the grounds that plaintiff is not the real party in interest. Plaintiff requests leave to file a second amended complaint, adding Keane as a defendant and various causes of action for misappropriation of trade secrets, fraud, and unjust enrichment. Finally, NYNEX has filed objections to Magistrate Judge Bernikow's September 21, 1995 order regarding the scope of discovery into NYNEX's allegedly confidential business activities in China for the period 1990 through 1993.

## II. *AGS' Motion to Dismiss Pursuant to Rule 17(a)*

Defendant AGS contends that the named plaintiff, Four Star Capital Corporation, is not the true party in interest in this case and moves to dismiss pursuant to Rule 17(a), F.R.Civ.P.[6] AGS asserts that another entity—a general partnership between Joseph Waskiewicz, the founder and principal of Four Star, and Four Star International, Inc.—was the party that in fact conducted Four Star's operations in China and, hence, the only party that has standing to pursue these various causes of action. This general partnership also was titled Four Star Capital.

AGS bases its contention entirely on the deposition testimony of Mark Ryan, a certified public accountant for Four Star.[7] From this testimony, it appears that three Four Star entities were in existence at the time of the events leading to the instant controversy: the Four Star partnership,[8] Four Star Inc., and the Four Star Capital Corporation. Plaintiff does not concede that the named plaintiff is incorrect, but has consented to add the partnership pursuant to Rule 15(a), F.R.Civ.P. should the court determine that it is the true party in this action.

Ryan's testimony is inconclusive at best as to whether Four Star Capital Corporation or the Four Star partnership is the real party in interest. Although Ryan testified that he was aware of the partnership's business ventures in China, (Ryan Dep., at 138–139), he stated that he did not know whether Four Star Capital had conducted any business ei-

---

5. The court also determined that New York law governs the instant action. *See Four Star, 1993 WL 350016, at \*3.*

6. Rule 17(a) provides in relevant part that
[e]very action shall be prosecuted in the name of the real party in interest. . . . No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Rule 17(a), F.R.Civ.P.

7. It is not clear, however, whether Ryan was the accountant for Four Star Capital or for each of the Four Star entities.

8. Ryan testified that Joseph Waskiewicz was a 98% partner in the partnership, with Four Star International, Inc.'s interest comprising the remaining 2%. According to Ryan, Four Star International was a shell corporation and owned 100% by Waskiewicz. (AGS Mem. of Law to Dismiss Pursuant to Rule 17(a) [hereinafter AGS' Rule 17(a) Mot. to Dismiss], Ryan Dep., Exh. at 36.)

ther in China or in the United States.[9] (*Id.* at 138). From this limited information, it is unclear whether Ryan is even qualified to testify regarding the nature and extent of Four Star Capital's business in either country. (Ryan Dep. at 138–139, 141–143.)

In sum, the evidence presented to date does not show that Four Star Capital is not the true party. Indeed, that Four Star Capital was a named party to the alleged agreement presents at least a question of fact as to whether it or another Four Star entity suffered the harms alleged in this case. This the court must resolve after additional discovery and upon further development of the underlying facts.

■ Rule 21, F.R.Civ.P grants the court "broad discretion to permit a change in the parties at any stage of a litigation." See *Int'l Union of Bricklayers & Allied Craftsmen Local No. 5 v. Hudson Valley Dist. Council Bricklayers & Allied Craftsmen Joint Ben. Funds*, 162 F.R.D. 17, 24 (S.D.N.Y.1995) (Conner, J.). The court's decision to permit joinder is based on whether the claims of the additional plaintiffs arose out of the same or separate acts or occurrences, see *Kahn, et al. v. Chase Manhattan Bank, N.A.*, No. 90 Civ. 2824, 1995 WL 491067, at 3 (Aug. 17, 1995) (McKenna, J.); whether the party seeking joinder has unnecessarily delayed the proceedings; and whether the nonmovant would be prejudiced by the addition, see *Thomas v. Mitchell–Bradford Chemical Co.*, 582 F.Supp. 1373, 1376 (E.D.N.Y.1984).

■ AGS principally objects that it would be unduly prejudiced by the joinder of the Four Star partnership at this stage of the litigation and that Waskiewicz, as the 100% owner of all the Four Star entities, knew or at least should have known which of them had conducted business in China. AGS also claims that any plaintiff joined in these proceedings should not be permitted to relate its claims back to the original date of filing.

AGS has not demonstrated either undue delay on plaintiff's part or that it would be significantly prejudiced by the joinder of the Four Star partnership. Notwithstanding the fact that Four Star has several different counterparts, the acts complained of appear to have occurred against a single entity. Hence, defendants had notice of the potential causes of action against it, and there is no threat that they are being forced to defend themselves against an unanticipated claimant. *Cf. Kahn*, 1995 WL 491067, at *3 (observing "defendant's interest in foreclosing claims by additional plaintiffs arising out of identical but separate acts").

As to whether Waskiewicz was apprised of Four Star's status, AGS has not set forth any specific evidence that shows plaintiff's omission was anything but an honest mistake or an oversight. To ensure that this matter is litigated in the most efficient manner possible, the court will allow the joinder of the Four Star partnership and/or any of the other Four Star entities that the parties determine may have a stake in this litigation, subject to the parameters discussed herein. The claims of any such plaintiff will relate back to the filing date of the initial complaint.

III. *Plaintiff's Rule 56(f) Motion to Discontinue Summary Judgment*

When confronted with matters outside the pleadings that it wishes to consider, a court may elect to treat a motion for judgment on the pleadings as a motion for summary judgment, see *SIFCO Industries, Inc. v. Advanced Plating Technologies, Inc.*, 867 F.Supp. 155, 157 n. 2 (S.D.N.Y.1994) (Schwartz, J.); *U.S. v. Certain Real Property, etc.*, 156 F.R.D. 26, 30 (E.D.N.Y.1994), provided that it allows the parties a reasonable opportunity to present evidence on the matter being decided. See *Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687, 689 (2d Cir.1990). Both NYNEX and AGS have conceded that this motion is ripe for summary judgment and have furnished evidence to this end.

In its memorandum of law opposing NYNEX's motion for judgment on the pleadings, plaintiff outlines in voluminous detail the activities that allegedly gave rise to the

---

**9.** In fact, Ryan could definitively attest only that Four Star Capital was licensed for business in Great Britain; that it did business in Greece; and that as far as he knew, its business was confined to operations in Europe. (Ryan Dep. at 137.)

agreement between it and the defendants. Plaintiff has also submitted a series of depositions, memoranda, and other bits of evidence in opposition to both defendants' Rule 12(c) motions and defendant AGS' summary judgment and Rule 17 motions. (*See* Righthand Decl. and attachments.) Plaintiff's very detailed memorandum and its accompanying documentation clearly indicate that it anticipated the conversion of defendants' 12(c) motions into one for summary judgment.[10] In this regard, plaintiff had ample opportunity to submit evidence and is not prejudiced by the court's disposition of this matter by summary judgment. *See Bordeaux v. Lynch,* 958 F.Supp. 77, 82 (N.D.N.Y.1997).

Nonetheless, plaintiff contends that it has not had sufficient opportunity to develop the facts in this case in part because the court, in an earlier ruling, limited the scope of discovery to employees of defendants residing in the United States, (*see* McKenna Order April 12, 1994), and also because defendants supposedly have refused to divulge information that is fundamental to the dispute. In this respect, plaintiff has requested the court to deny any summary judgment motions until it has further opportunity to develop facts it deems relevant to this case.

█ Rules governing discovery should be broadly construed to afford parties the opportunity to relate to the court the nature and scope of the controversy, to frame the salient issues in the case, and to enable the parties to obtain factual information in preparation for trial. *See Gary Plastic Packaging Corp. v. Merrill Lynch,* 756 F.2d 230, 236 (2d Cir.1985). As a general rule, courts are reluctant to terminate discovery in the early stages of litigation and generally require discovery to be complete before granting summary judgment. *See Elliott Assocs., L.P. v. Republic of Peru,* 961 F.Supp. 83, 86 (S.D.N.Y.1997) (Sweet, J.); *U.S., ex rel. Kreindler & Kreindler v. United Technologies Corp.,* 777 F.Supp. 195, 201 (N.D.N.Y.

1991), *aff'd,* 985 F.2d 1148 (2d Cir.1993). If discovery is incomplete, a party may request that the court deny summary judgment under Rule 56(f), F.R.Civ.P. by filing an affidavit or declaration explaining what additional facts are sought, "how they will create a factual issue precluding summary judgment, what efforts have been made to obtain these facts and why these efforts have failed." *Cramer v. Devon Group, Inc.,* 774 F.Supp. 176, 180 (S.D.N.Y.1991) (Leisure, J.).

█ The object of Rule 56(f) is to prevent a premature or improvident grant of a motion for summary judgment. *See* 10A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2740, at 532 (2d ed.1983). Because the rule is to be "applied with a spirit of liberality," *id., plaintiff need not present evidence that would be admissible at trial to support a motion for abeyance.*[11] See *Carney v. U.S. Dep't of Justice,* 19 F.3d 807, 813 (2d Cir.1994). On the other hand, neither bare allegations nor mere speculation will suffice to stay a motion for summary judgment. Plaintiff must furnish enough information to convince the court that it is not engaged in a fishing expedition for claims that have no hope of being substantiated.

█ In its accompanying declaration, plaintiff states that additional depositions of NYNEX executives, including Fred Salerno and Richard Blackburn, are required to determine the extent of NYNEX's awareness of AGS' operations. (Righthand Decl. ¶ 2, at 3.) To this end, plaintiff has submitted depositions showing the chain of command at AGS and NYNEX, presumably to illustrate how information concerning Proctor's activities might have reached top executives at both companies. Memoranda from Proctor to Marty Aronow, Proctor's immediate supervisor, and Aronow's own testimony indicate that Aronow at least was informed of Proctor's attempts to strike up business for AGS

---

10. In fact, although the title page of the Righthand declaration states that it is being offered in opposition to AGS' summary judgment motion, the text of the declaration "request[s] the Court [pursuant to Rule 56 and Rule 56(f) ] to refuse the application for judgment by the Defendants in this case."

11. In this regard, the court need not consider AGS' various objections to the evidence plaintiff's counsel has submitted in support of its Rule 56(f) motion.

in China, (Aronow Dep. at 207–212, 215, 275, 327–334, 438–441, 493; Righthand Decl., Exhs. 0, P), and of Proctor's plan to leverage NYNEX's capabilities in his business dealings with Liu Dan, (Righthand Decl., Exh. P). Plaintiff also presents some evidence that Proctor's activities might have been discussed at AGS executive committee meetings attended by Anthony Stepanski, president and CEO of AGS Information Services and executive vice president of AGS Computers, Inc. (Righthand Decl., Stepanski Dep. at 32–33, 95.) Stepanski reported to Paul Cosgrave, president and CEO of AGS Computers, Inc., (id., at 16–19), who in turn reported monthly to Blackburn and on a quarterly basis to Salerno, (Righthand Decl., Cosgrave Dep. at 69–71).

Also attached to plaintiff's declaration are newsclips off the internet that discuss NYNE's business interests in China—specifically with the Chinese Ministry of Electronics Industry and Mr. Salerno's involvement in those ventures. (Righthand Decl., Exh. U.) Through these clippings, plaintiff purports to establish that additional discovery is needed to determine whether NYNEX learned of the opportunities in China from Mr. Proctor or by other means. To date, NYNEX has refused to supply this information, arguing that its activities in China constitute non-discoverable trade secrets. *See infra*, Part VI. Plaintiff contends that certain elements of its case—including the extent of Derek Proctor's actual or apparent authority to act as NYNEX and AGS' agent and representative in China—are lacking as a result of defendants' unwillingness to comply with discovery.

Plaintiff's complaints regarding discovery to date are unrelated to the claims against AGS. The depositions plaintiff proposes to take are of NYNEX, not AGS, executives. Further, the declaration of plaintiff's counsel in support of its 56(f) motion focuses singularly on the difficulty it has encountered with respect to NYNEX, not AGS. In particular, plaintiff argues that completing the depositions of NYNEX witnesses has been "like pulling hen's teeth"—due in part to scheduling problems that have arisen in completing the depositions of AGS employees on the matter of AGS' liability, (Righthand Decl. ¶ 3), and also due to NYNEX's insistence that the information plaintiff is seeking constitutes undiscoverable trade secrets and that "the particular NYNEX executives are ... too busy to sit for deposition," (id. ¶ 5). Thus, other than a blanket reference to "[d]efendants' utter refusal to answer interrogatories and request [sic] for production of documents served," plaintiff has not made the court aware of any specific objections to AGS' role in the discovery process or any other reasons why plaintiff is unable to proffer specific evidence in opposition to AGS' motion for summary judgment. Accordingly, plaintiff's Rule 56(f) motion is denied as to defendant AGS. Furthermore, additional discovery on plaintiff's breach of contract claim and its claims for breach of the covenant of good faith, promissory estoppel, interference with existing contract, and interference with prospective economic advantage or business relations would not serve any purpose as to either defendant. For reasons discussed below, these claims present questions of law, not fact, and the court can dispose of them without plaintiff undertaking further investigation.

■ However, the court is not convinced that plaintiff has had the opportunity to fully explore the facts surrounding its remaining claim against NYNEX for partnership by estoppel. To this end, the depositions of Richard Blackburn and Fred Salerno may help to elucidate what, if anything, NYNEX knew of Proctor's activities and to what extent they may have sanctioned those activities. Particularly in view of NYNEX's refusal to date to comply with discovery, *see e.g., Glen Eden Hosp., Inc. v. Blue Cross & Blue Shield of Mich., Inc.*, 740 F.2d 423, 428 (6th Cir.1984) (trial court abused its discretion in declining to permit plaintiff to conduct further discovery where defendant "had not been extremely forthcoming" in response to plaintiff's discovery requests), the court cannot in good conscience terminate plaintiff's claim at this stage on summary judgment grounds.

Defendant NYNEX's motion for summary judgment as to plaintiff's claim for partnership by estoppel is denied. Plaintiff may

<br>

**101**

proceed with the depositions of NYNEX executives Fred Salerno and Richard Blackburn, and other NYNEX officials it deems relevant to this case.

### IV. Defendants' 12(c) Motion for Judgment on the Pleadings and for Summary Judgment, in the alternative[12]

#### A. Breach of Contract

 Defendants NYNEX and AGS contend that the oral agreement plaintiff alleges was in operation from March to May, 1992 involves the negotiation of a business opportunity and, therefore, violates the New York Statute of Frauds, N.Y.Gen. Obligations Law, § 5–701(a)(10).[13] Defendants further assert that the written agreement is unenforceable because it inadequately defines certain terms that are essential to a partnership agreement and omits other essential terms altogether. Finally, defendants claim that plaintiff is barred under the Statute of Frauds from using parol evidence either to supply missing terms or to further substantiate terms that are vaguely defined. Plaintiff counters that defendants have too narrowly construed plaintiff's role in the alleged partnership and that the Statute of Frauds does not apply because its responsibilities under the oral and written agreements encompassed more than just the negotiation of business opportunities.

Neither the agreement[14] nor the complaint corroborate plaintiff's broad description of its contractual obligations. The agreement chiefly requires plaintiff to develop business for defendants by marketing the services of NYNEX/AGS,[15] by identifying opportunities for providing these services to government entities, and by introducing NYNEX/AGS to potential customers. (Agreement, Art. 5(a).) The auxiliary services discussed in Art. 5(b) merely supplement the plaintiff's primary task of cultivating business ventures for the defendants.[16] The complaint also principally alleges that plaintiff was wrongly denied compensation after introducing Liu Dan, among other government officials, to defendants and then working specifically to develop a business relationship between the two parties. (FAC, ¶¶ 6, 8, 9, 13, 39, 40.) Hence, the thrust of plaintiff's breach of contract claim is that it was denied the fee it was promised for identifying potential business

12. Because the defendants plead essentially the same defenses in their briefs, the court has consolidated their arguments for the sake of efficiency.

13. This section provides that

(a) [e]very agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking

...

(10) Is a contract to pay compensation for services rendered in ... negotiating ... a business opportunity.... 'Negotiating' includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction.

N.Y.Gen. Obligations Law, § 5–701(a)(10).

14. Plaintiff incorporates by reference the written agreement into the complaint. (See FAC, ¶ 7.)

15. In using this term, the court expresses no view regarding the actual or perceived partnership of the defendants NYNEX and AGS and uses the term only because it is used in the alleged agreement. Whether NYNEX and AGS were partners or represented themselves as such remains a question of fact. See infra, Part V.F.

16. Article 5(b) spells out the following obligations of the "Second Party":

1. Advise the FIRST PARTY of customs and practices in The Peoples Republic of China by Chinese owned entities with respect to the services provided by the FIRST PARTY, and with respect to negotiating and contracting practices in THE TERRITORY and of Chinese owned entities.

2. Assist FIRST PARTY in developing sales strategies and introductions developed at potential CLIENTS.

3. Assist the FIRST PARTY in preparing proposals.

4. Advise the FIRST PARTY with respect to obtaining favorable price and terms and conditions for contracts.

5. Assist in negotiating contracts as reasonably requested by FIRST PARTY.

6. Assist the FIRST PARTY in locating accommodations, facilities and services for employees of FIRST PARTY.

7. Advise employees of FIRST PARTY of local customs and practices.

8. Provide jointly with FIRST PARTY local employees and consultants for work on the project.

partners, an arrangement which falls within the purview of the Statute of Frauds.

■ The Statute of Frauds permits a party to renege on certain oral agreements in order to avoid the risk that innocent parties will be forced to adhere to fraudulent contracts. *See Presti v. Wilson,* 348 F.Supp. 543, 545 (E.D.N.Y.1972). In keeping with this policy, the statute requires that all essential terms of such agreements be in writing. *See Celi v. Canadian Occidental Petroleum Ltd.,* 804 F.Supp. 465, 469 (E.D.N.Y. 1992); *F.H. Krear & Co. v. Nineteen Named Trustees,* 545 F.Supp. 372, 374 (S.D.N.Y. 1982) (Duffy, J.). Extrinsic evidence may not be used to meet the statute's threshold requirements where the agreement is clearly insufficient on its face. *See Scheck v. Francis,* 26 N.Y.2d 466, 311 N.Y.S.2d 841, 260 N.E.2d 493 (1970). Accordingly, plaintiff is barred from invoking any verbal agreements or relying on extrinsic evidence either as proof that a contract was formed between the parties or to supplement missing or incomplete terms of the contract.

■ The contract in question, which supposedly represents a multi-million dollar business deal, (FAC, ¶ 13), is a scanty five-paged document lacking in both form and substance. Material terms in the agreement are either vaguely defined or not defined at all. The paragraphs in the contract are misnumbered and the references in the agreement to the "first party" and "second party" are different in the preamble than they are on the signature block, making it unclear what either plaintiff or defendant has contracted to perform.[17] Moreover, although AGS is designated as the "FIRST PARTY" in the preamble to the contract, Derek Proctor signed the agreement on behalf of "NYNEX/AGS."

Most significant, however, is the lack of a provision governing the sharing of losses among principals.[18] This is a vital component of a partnership and its absence is sufficient without more to defeat plaintiff's claim that the purported contract is viable under the Statute of Frauds.[19] *See ACLI Gov't Sec., Inc. v. Rhoades,* 813 F.Supp. 255, 256 (S.D.N.Y.) (Lasker, J.), *aff'd sub nom. Gov't v. Rhoades,* 14 F.3d 591 (2d Cir.1993); *Chanler v. Roberts,* 200 A.D.2d 489, 606 N.Y.S.2d 649, 650–651 (N.Y.App.Div.1994); *Bruno v. Dynamic Enterprises, Inc.,* 132 A.D.2d 964, 518 N.Y.S.2d 494, 495 (N.Y.App. Div.1987); *Scharf v. Crosby,* 120 A.D.2d 971, 502 N.Y.S.2d 891, 892 (N.Y.App.Div.1986); *Missan v. Schoenfeld,* 95 A.D.2d 198, 465 N.Y.S.2d 706, 711–712 (N.Y.App.Div.1983).

■ Notwithstanding this obvious defect, plaintiff argues that the contract should still be honored because its partial performance exempts the agreement from the Statute of Frauds. This alleged performance consists of providing information and aid—including office space in China—to defendants, introducing them to Liu Dan, coordinating· Mr. Dan's trip to New York, and setting up seminars where defendants could pitch their services to him.

The equitable doctrine of part performance requires a party to demonstrate that the acts performed were "so 'clear, certain, and definite in their object and design as to refer to a complete and perfect agreement of which they are a part execution,'" *Korff v. Pica Graphics, Inc.,* 121 A.D.2d 511, 504 N.Y.S.2d 17, 18 (N.Y.App.Div.1986) (quoting 56 N.Y.Jur., Statute of Frauds § 250, pp. 354–355). Plaintiff satisfies none of these criteria as the acts it alleges neither refer unequivocally to the agreement, *see Fischer v. Trost,* 140 A.D.2d 409, 528 N.Y.S.2d 332 (N.Y.App.

---

**17.** AGS is identified as the "FIRST PARTY" in the preamble, but the "SECOND PARTY" in the signature block and vice versa for Four Star Capital.

**18.** Because the agreement is invalid without a provision to share losses, the court need not address defendants' claim that other essential terms are lacking or that the contract is too indefinite to be enforced.

**19.** The court rejects plaintiff's assertion that the agreement to share in the operating expenses of the business corresponds to loss-sharing between the parties. The two provisions to which plaintiff refers nowhere mention the apportionment of losses. Article 8 addresses itself to the payment of office and administrative expenses; Article 9 concerns the division of profits. (*See* FAC, Arts. 8 & 9, at 3.) Were the court to adopt plaintiff's view, any expense could be couched as a "loss" under a partnership agreement.

Div.1988), nor objectively manifest NYNEX's assent to contract for plaintiff's services, *see Presti*, 348 F.Supp. at 546. Accordingly, the Statute of Frauds still applies and plaintiff's breach of contract claim against both defendants is dismissed.

### B. *Breach of the Covenant of Good Faith and Fair Dealing*

■ Defendants contend that plaintiff's claim for breach of the covenant of good faith and fair dealing should be dismissed because it is redundant of the breach of contract claim. The court need not reach this argument because a duty to negotiate in good faith cannot arise absent an enforceable agreement. *See Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 264 (2d Cir.1984); *Frutico, S.A. de C.V. v. Bankers Trust Co.*, 833 F.Supp. 288, 300 (S.D.N.Y.1993) (Sweet, J.). This claim also is dismissed.

### C. *Interference with Existing Contractual Relationship*

■ Plaintiff asserts that both defendants were fully aware of the alleged agreement and that by repudiating it they destroyed the three-way contractual relationship between themselves and with plaintiff. This claim also is rejected. It is axiomatic that a party cannot maintain an action contesting interference with a contract where no viable contract exists. *See Greystone v. Koninklijke Luchtvaart Maatschappij*, 815 F.Supp. 745, 754 (S.D.N.Y. 1993) (Tenney, J.); *Ferraro v. Finger Lakes Racing Ass'n, Inc.*, 182 A.D.2d 1072, 583 N.Y.S.2d 66, 67 (N.Y.App.Div.1992).

### D. *Promissory Estoppel*

Plaintiff alleges that it relied on defendants' assurances that they would perform any of the services requested by the Chinese government that were negotiated by plaintiff on defendants behalf. As a consequence of defendants' refusal to honor their promise, plaintiff claims that it has lost face with the Chinese government and with other potential business partners, in addition to losing out on a major agreement that it asserts was on the verge of materializing with Liu Dan.

■ The doctrine of promissory estoppel provides that "a promise which the promisor should reasonably expect to induce action or forbearance [ ] is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise." *Kubin v. Miller*, 801 F.Supp. 1101, 1122 (S.D.N.Y.1992) (Kram, J.). Under New York law, however, this doctrine is confined to cases where application of the Statute of Frauds would produce an unconscionable result. *Id.; see also Cardone v. Empire Blue Cross and Blue Shield*, 884 F.Supp. 838, 844 (S.D.N.Y.1995) (Baer; J.). Because the harms claimed by plaintiff are not sufficiently egregious to defeat the operation of the statute, *see Kubin*, 801 F.Supp. at 1122 (concluding that "loss of a finder's fee … is not generally classified as unconscionable"); *Carvel Corp. v. Nicolini*, 144 A.D.2d 611, 535 N.Y.S.2d 379, 381 (N.Y.App.Div.1988), plaintiff may not invoke promissory estoppel to salvage its action for breach of contract. This claim against defendants also is dismissed.

### E. *Interference with Prospective Economic Advantage or Business Relations*

■ To establish a claim for interference with prospective economic advantage plaintiff must show that the defendants intentionally interfered with a business relationship between plaintiff and a third party; that they acted with the sole purpose of harming the plaintiff or used means that were dishonest, unfair or improper; and that the relationship was injured as a result of the interference. *See Purgess v. Sharrock*, 33 F.3d 134, 141 (2d. Cir.1994); *Rosenfeld v. W.B. Saunders*, 728 F.Supp. 236, 250 (S.D.N.Y.) (Cannella, J.), *aff'd*, 923 F.2d 845 (2d Cir.1990). The relationship between plaintiff and the third party need not be contractual and, as a matter of practice, generally does not rise to the level of a contract. *See Volvo N. Amer. v. Men's Intern. Pro. Tennis Coun.*, 857 F.2d 55, 74 (2d Cir.1988). If defendants are alleged to have thwarted the relationship to advance their own competing interests, then plaintiff's claim will fail unless it proves that the defendants' method of self-promotion was criminal or fraudulent.

*See PPX Enterprises, Inc. v. Audiofidelity Enterprises,* 818 F.2d 266, 269 (2d Cir.1987).

 The sum total of defendants' alleged acts of intentional interference with plaintiff's business relations is their disavowal of an otherwise invalid agreement with plaintiff. (FAC, ¶¶ 29, 31–32.) This alone falls far short of the degree of interference typically required to sustain this tort claim. *See Philips Credit Corp. v. Regent Health Group, Inc.,* 953 F.Supp. 482, 525 (S.D.N.Y.1997) (Edelstein, J.) (observing that party's refusal to enter into written agreement does not "rise to the level of severity" required to maintain same cause of action); *cf. WFB Telecommunications v. NYNEX Corp.,* 188 A.D.2d 257, 590 N.Y.S.2d 460, 461 (N.Y.App. Div.1992) (concluding that defendant's decision to discontinue its business with plaintiff did not constitute intentional interference with plaintiff's business relations with its other clients). In addition, neither plaintiff's complaint nor the litany of papers it has submitted in opposition to defendants' motions even remotely suggest that defendants took any unfair, dishonest, improper, or fraudulent action toward Liu Dan or any of plaintiff's other clients. Hence, defendants cannot be said to have interfered with plaintiff's business in the manner in which that tort is commonly interpreted. *See Philips Credit Corp.,* 953 F.Supp. at 525 (claim for tortious interference with business relations requires allegation that actions were directed toward third party); *Marilyn Miglin v. Gottex Industries, Inc.,* 790 F.Supp. 1245, 1254 (S.D.N.Y.1992) (Francis, Mag. J.) (granting summary judgment on same grounds). This claim against both defendants AGS and NYNEX is dismissed.

### F. Partnership by Estoppel

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the nonmovant, the court determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), F.R.Civ.P. The nonmovant must do more than demonstrate that there is " 'some metaphysical doubt as to the material facts.' " *Bordeaux,* 958 F.Supp. at 82. Rather, it must show that issues of fact exist that are reasonably capable of being decided in favor of either party. *See Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990).

#### 1. AGS evidentiary objections

AGS objects on numerous grounds to the evidence submitted by plaintiff in opposition to AGS' motion for summary judgment.[20] Inter alia, AGS disputes the admissibility of the depositions of Marty Aronow and Anthony Stepanski on the grounds that plaintiff has failed to lay a proper foundation for the testimony's admissibility.[21]

Federal Rule of Evidence 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R.Evid. 602. Such evidence "may, but need not, consist of the witness' own testimony." *Id.*

 In his deposition, Mr. Aronow testified that he was regional vice president at AGS, (Aronow Dep. at 208), and Derek Proctor's supervisor, *(id.* at 190); that he received status reports from Proctor over a period of fourteen months, *(id.* at 212), discussing Proctor's activities throughout the world and in China, *(id.* at 207–212); and that it was

---

**20.** Plaintiff has not submitted any memorandum of law specifically opposing AGS' motion. Rather, it appears to rely on the affidavit and attachments it offers under Rule 56(f) to stay defendants' motions for summary judgment and a memorandum it filed opposing NYNEX's motion for judgment on the pleadings. In accordance with plaintiff's instructions, *(see* Recap of Fully Briefed and Submitted Matters, at 3, indicating that plaintiff submitted the documents mentioned above in opposition to AGS' motion for judgment on the pleadings or for summary judgment, in the alternative), the court will rely on these two documents for the purposes of deciding this motion.

**21.** AGS also asserts that the Aronow and Stepanski's testimony is incomplete; that portions cited by plaintiff were not served on AGS; and that plaintiff has failed to proffer all relevant portions of the testimony in its submission to the court. Nonetheless, it does not appear that AGS has been prejudiced in this regard and, thus, the court declines to exclude their testimony on this basis.

Aronow's job to evaluate these memoranda and to "understand what [Proctor] was doing," (*id.* at 195). Aronow also testified that he discussed with Proctor which parties should be invited to attend the meeting with Liu Dan in New York. (*Id.* at 332–334.) As a whole, this testimony shows that Aronow was suitably familiar with Proctor's activities as an AGS employee to testify regarding Proctor's business dealings in China with plaintiff and with Liu Dan generally.

■ In his deposition, plaintiff also elicited that Stepanski was "president and CEO of AGS Information Services and executive vice president of AGS Computers, Inc.," (*see* Righthand Decl., Exh. D, at 8), and that he reported directly to the President of AGS Computers, Inc, (*id.* at 17), who in turn reported to Fred Salerno as vice chairman of NYNEX Corporation, (*see* Righthand Decl., Exh. E, at 66), and Richard Blackburn, who acted as a chief operating officer for NYNEX, (*id.* at 70).[22] This testimony establishes that Stepanski is qualified to testify both to AGS' actual relationship with NYNEX and whether it was a practice at AGS to use the NYNEX/AGS nomenclature.

### 2. Consideration of the claim for Partnership by Estoppel

■ In the complaint, plaintiff alleges that defendants AGS and NYNEX agreed "as co-owners" "to pursue projects with the government of China knowing that performance of any such projects would require the combined investment of personnel, technical knowledge, funding, and administration supplied both by defendants AGS and NYNEX." (FAC, ¶ 37.) Plaintiff further alleges on information and belief that "an oral written [sic] partnership and/or joint venture agreements between defendants NYNEX and AGS" existed from March, 1992 through July, 1992 and that plaintiff "relied on the actual and/or apparent joint venture between NYNEX and AGS in pursuing business opportunities in China." (*Id.* ¶¶ 39, 40.)

AGS counters that plaintiff's claim is barred by New York Partnership Law, ¶ 27, which provides in pertinent part:

> When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, *given credit* to the actual or apparent partnership, and if he has made such representation or consented to its being made in a public manner he is liable to such person, whether the representation has or has not been made or communicated to such person so *giving credit* by or with the knowledge of the apparent partner making the representation or consenting to its being made. (emphasis added)

This section, defendant contends, requires that the party seeking to establish the existence of a partnership have extended financial credit to the purported partners—a fact not alleged in this case—before that party can prevail on a claim for partnership by estoppel.

Courts have construed "given credit" to mean that a party has extended financial credit, *see e.g., Stochastic Decisions, Inc. v. DiDomenico,* 995 F.2d 1158 (2d Cir.1993), but also to signify that a party has relied on another party's representations regarding the existence of a partnership, *see e.g., Milano by Milano v. Freed,* 64 F.3d 91, 98 (2d Cir.1995) (rejecting "partnership by estoppel" claim against non-partner in medical malpractice action where plaintiffs could not demonstrate that they had relied on any representations concerning non-partner when selecting group practice); and *Sitchenko v. DiResta,* 512 F.Supp. 758, 761–62 (E.D.N.Y.1981) (holding that plaintiff had "given credit" to purported partnership by entering into employment agreement in reliance on certain representations that partnership existed); *Hartford Accident & Indemni-*

---

**22.** AGS also objects to Paul Cosgrave's testimony, herein cited. For the same reasons discussed with respect to the Aronow and Stepanski depo-

sitions, *see infra,* note 25, this objection is without any basis and the court considers this evidence accordingly.

*ty Co. v. Oles,* 152 Misc. 876, 274 N.Y.S. 349 (N.Y.1934) (observing that § 27 estoppel claim will lie only where defendant represented himself either by words or conduct as a partner and plaintiff was influenced by or relied upon those representations). Thus, plaintiff has set forth a plausible interpretation of § 27.[23]

If AGS was not in fact a partner of NYNEX, plaintiff has submitted enough evidence to suggest that AGS at least publicly represented itself as such.[24] Specifically, plaintiff proffers a letter to the National Bank of Kuwait signed by Marty Aronow as "Regional V.P. of NYNEX/AGS" in which Aronow discusses the "two accounts of NYNEX/AGS," (Righthand Decl., Exh. GG); Proctor's signature on the Four Star Agreement as "V.P. International Consulting" for "NYNEX/AGS", a copy of Proctor's business card indicating the same, (*id.,* Exh. JJ);[25] deposition testimony of Anthony Stepanski that he had personally observed the use of the NYNEX/AGS nomenclature at AGS and had himself employed the terminology, (*id.,* Stepanski Dep. at 8); and Aronow's testimony that AGS customarily used its status as a NYNEX subsidiary as a "marketing tool" to obtain business, (*id.,* Aronow Dep. at 202). Taken as a whole and construed in a light most favorable to plaintiff, this evidence creates a genuine issue of material fact that AGS either represented itself or consented to being represented as a partner with NYNEX and that Aronow, as Proctor's supervisor, (*id.* at 120), either purposively or by example, sanctioned Proctor's use of the NYNEX/AGS name. *See Interpool Ltd. v. Bernuth Agencies, Inc.,* 959 F.Supp. 644, 650 (S.D.N.Y. 1997) (Motley, J.) (agent has apparent authority if principal is responsible for appearance of agent to conduct transaction in question and third party reasonably relies on

agent's representations). A question of fact also exists as to whether the tour given by AGS to Liu Dann of the NYNEX Science & Technology Laboratory was a standard operation or one reserved, as plaintiff alleges, for potential clients. (Righthand Decl., Aronow Dep. at 512–513.) The tour of a NYNEX facility, combined with use of the NYNEX/AGS title by top AGS executives, could reasonably have created an impression on plaintiff's part and on the part of third parties that the two companies were in partnership with each other.

## V. *Plaintiff's Motion to Amend Pursuant Rule 15(a)*

 Plaintiff requests leave to amend its complaint by joining Keane, Inc. as a defendant and by adding claims for misappropriation of trade secrets, fraud, and unjust enrichment. Leave to amend should be freely given unless such amendment would be futile, is sought in bad faith, or would prejudice the opposing party, *see AIU Ins. Co. v. Mitsui O.S.K. Lines, Ltd.,* 897 F.Supp. 724, 726 (S.D.N.Y.1995) (Carter, J.), by requiring it to expend an excessive amount of time and resources preparing for another round of discovery, *see Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993).

In opposition to plaintiff's motion, AGS chiefly contends that plaintiff knew or should have known much earlier the facts that form the basis of its latest allegations; that AGS would be required to resubpoena parties that have already been deposed; and that it would have to negotiate diplomatic and/or consular channels to effectuate service on Chinese citizens. *See* Hague Convention, Art. 8, note 6 of signatory parties. AGS further charges that plaintiff's fraud claim is brought in bad faith because plaintiff filed the very similar claim of negligent misrepre-

---

**23.** Nor is there any basis for AGS' assertion that plaintiff's claim is founded on conclusory allegations. After due consideration, the court finds that the complaint meets the minimum standards required in notice pleading. Rule 8(a), F.R.Civ.P.

**24.** This deposition testimony is offered as circumstantial evidence that Aronow, Proctor, and Stepanski made certain representations regarding AGS' relationship with NYNEX, and not to

establish whether AGS and NYNEX were partners in fact. Accordingly, it is admissible under the rule against hearsay. *See Headley v. Tilghman,* 53 F.3d 472, 477 (2d Cir.1995).

**25.** Because the Aronow letter and Proctor's business card speak for themselves, plaintiff's counsel may submit them as evidence of AGS' representations, though he does not have personal knowledge of their content.

sentation in its initial complaint and that joining Keane as a defendant would not serve any purpose since Keane would be liable as a matter of law for any judgment against AGS. (Letter to Judge Bernikow, March 16, 1995, at 3–4.) .

As to AGS' general objections, there is no evidence of any bad faith or inordinate delay by plaintiff. Nor is the court convinced that AGS would be prejudiced by the addition of plaintiff's newly asserted claims. Conducting discovery in China will unquestionably be difficult. However, this is an inconvenience that inheres in the subject matter and scope of the litigation and does not result per se from plaintiff's decision to amend its complaint at this stage of the litigation. Finally, although it might be vexing to depose witnesses who have already been deposed, the burden on AGS is not so onerous that plaintiff should be deprived of the opportunity to assert otherwise valid claims. Moreover, should deposition of AGS' witnesses prove unreasonably cumulative or duplicative, AGS can move to limit discovery pursuant to Rule 26(b)(2), F.R.Civ.P.

 With respect to Keane's involvement in the case, AGS all but concedes that it would be liable for any judgment against Keane. Yet, it has chosen to file a string of opposition papers to plaintiff's request that Keane be joined as a defendant, apparently on the theory that plaintiff will use the addition as a means to broaden the scope of its discovery. This is an insufficient grounds for denying plaintiff's motion to amend. To the extent that the scope of discovery poses a real concern, plaintiff is still bound by Rule 26(b)(1), which limits discovery to materials that are relevant to the action.

In any event, the cases cited by AGS clearly ˙establish that a court may permit the joinder of a transferee of interest should it determine that " 'the transferee's presence would facilitate the conduct of litigation.' " *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir.1985); *see also Federal Deposit Ins. Corp. v. Tisch*, 89 F.R.D. 446, 448 (E.D.N.Y.1981) (concluding that assignor and assignee were still real

parties in interest and, therefore, that their participation in the lawsuit would be the "most efficient way to insure that all issues will be fully litigated.") Indeed, the Tisch court appears to assume that the natural course of action is to join parties who are otherwise bound by the outcome of the litigation. *See Tisch*, 89 F.R.D. at 448 ("However, in light of· the assignment, and since the trustee in any event will be bound by any determination had herein, we conclude that joinder of the trustee is proper.") (citation omitted). Because the court sees no rational reason for denying it, plaintiff's request to add Keane as a defendant is granted.[26]

### A. Misappropriation of Trade Secrets

In the proposed Second Amended Complaint ("SAC") plaintiff claims that it "developed and maintained proprietary customers" in the course of its business; that such information "included, but was not limited to, the identity of plaintiff's customers, the names of individuals within each customer's organization, each customer's desires and preferences as to products marketed by plaintiff, and financial details for each customer." (SAC, ¶ 46.) This information—which allegedly was "unavailable to others in the industry" and was "of great value to plaintiffs' competitors"—also purportedly "required substantial time and money to compile" and was "the subject of reasonable efforts to maintain its confidentiality." (*Id.*) Plaintiff further avers that it divulged its list of client contacts pursuant to a "confidential relationship with defendants," (*id.*, ¶¶ 46–47), and that such relationship resulted from "oral and written agreements that plaintiff and defendants would jointly pursue business opportunities in China," (*id.*, ¶ 47).

 To support a claim for misappropriation of a trade secret under New York law, plaintiff must demonstrate that he possessed a trade secret and that defendant used such secret "in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Ivy Mar Co., Inc. v. C.R. Seasons Ltd.*, 907 F.Supp. 547, 556 (E.D.N.Y.1995). A trade secret is " 'any formula, pattern, device, or

---

**26.** In this respect, the court's disposition of all claims against defendants also applies to Keane.

compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Lehman v. Dow Jones & Co., Inc.,* 783 F.2d 285, 297 (2d Cir.1986), *citing Restatement of Torts,* § 757, comment b (1939).

■ In Lehman, the Second Circuit expressed its doubt that information used to evaluate the availability and attractiveness of a company for a corporate acquisition was a trade secret. Analogizing plaintiff's information to a "car that rolls off the product line," the court determined that the data in question was "what [plaintiff] had to sell" and not information that was used to conduct plaintiff's business. *See id.* at 298. Hence, the court distinguished between a process or device used to run a business and that produced by the business itself, concluding that the former qualifies as a trade secret while the latter does not. *See also Blank v. Pollack,* 916 F.Supp. 165, 174 (N.D.N.Y.1996).

Judging from its complaint, plaintiff's primary role was to identify projects and/or customers for NYNEX/AGS, (FAC, ¶ 6), and then formally introduce defendants to its various contacts, (*id.* ¶ 8). *See infra,* Part IVA (discussing plaintiff's breach of contract claim). In short, plaintiff was in the business of providing intelligence about the business landscape in China—which intelligence presumably consisted of the very information that plaintiff now alleges was its trade secret. Based on this, it is doubtful that plaintiff's information is protectable under a misappropriation analysis.

However, even if plaintiff were to meet the first prong of the misappropriation test, it has not alleged enough facts to pass the second prong of this test. The sole grounds for plaintiff's alleged confidential relationship with defendant are its purported oral and written agreements, (*see* SAC, ¶ 47), which the court has already determined are invalid under the Statute of Frauds. *See supra,* Part VA. Absent the agreements, plaintiff has no basis for its allegation that defendants violated a confidential relationship. Because permitting plaintiff to add this claim would be futile, the court denies plaintiff's motion to amend on this ground.

*B. Unjust Enrichment*

The proposed SAC sets forth a claim for unjust enrichment on the theory that defendants profited from plaintiff's efforts to promote defendants' products and services. (SAC, ¶¶ 61–62.) Defendants contend that the Statute of Frauds precludes plaintiff from using quasi-contract theories to recover for services rendered in negotiating a business opportunity.

■ A party may not circumvent the Statute of Frauds by repleading an already barred breach of contract claim as a claim for unjust enrichment. *See Paper Corp. of U.S. v. Schoeller Technical Papers, Inc.,* 742 F.Supp. 808, 812 (S.D.N.Y.1990) (Sweet, J.); *Seven Star Shoe Co., Inc. v. Strictly Goodies, Inc.,* 628 F.Supp. 1237, 1240 (S.D.N.Y.1986) (Sweet, J.). In its complaint, plaintiff avers that "a confidential relationship existed between plaintiff and defendants in that there were oral and written agreements between the parties"; that plaintiff and defendants together were to pursue business opportunities together in China pursuant to these agreements, (SAC, ¶ 59); that plaintiff endeavored under these agreements "to promote, promulgate, and educate the Chinese" regarding defendants, products and services; and that defendants "substantially benefitted", from plaintiff's efforts, (*id.,* ¶ 63), after it renounced the agreements, (*id.,* ¶ 62). Simply put, plaintiff's claim for unjust enrichment rests on the same allegations as its claim for breach of contract. This is an impermissible use of an unjust enrichment claim and, thus, plaintiff may not amend on this ground.

*C. Fraud*

■ To satisfy Rule 9(b), F.R.Civ.P. plaintiff must specify what was said to mislead plaintiff, who made the allegedly fraudulent statements, where and when such statements were made, the manner in which they were stated, and what defendants gained by making them. *See UBS Asset Management, Inc. v. Wood Gundy Corp.,* 914 F.Supp. 66, 70 (S.D.N.Y.1996) (Stanton, J.); *Manela v.*

*Gottlieb,* 784 F.Supp. 84, 87 (S.D.N.Y.1992) (Patterson, J.).

■ The SAC sets forth that from October, 1991 until July, 1992 defendants continuously represented to plaintiff that Derek Proctor was fully authorized to contract on behalf of NYNEX, AGS and/or NYNEX/AGS and that the defendants were ready, willing, and able to service prospective contracts with Four Star's clients in China. (SAC, ¶ 51.) These representations purportedly were made to plaintiff's representatives, Bill Hendricks and Joseph Waskiewicz, in China and in the United States verbally, in writing, and through the conduct of "NYNEX/AGS" agents Derek Proctor and Jan Orluck, Proctor's secretary. (*Id.* ¶ 52.) According to plaintiff, AGS and NYNEX executives were fully aware of these representations and approved the use of such statements despite knowledge of their falsity. (*Id.* ¶ 54.) The purpose of the fraud allegedly was to induce plaintiff, in reliance on these representations, to present to "NYNEX/AGS" the various contacts plaintiff had cultivated in China. (*Id.* 55.)

These allegations are specific enough to satisfy Rule 9(b). Defendants' assertion that plaintiff does not distinguish between the fraudulent acts supposedly committed by AGS and NYNEX and that it fails to identify which NYNEX executives were responsible for the alleged misrepresentations is without merit "since the complaint as a whole adequately alleges a scheme involving both defendants." *Bd. of Managers of 411 East 53rd Street Condominium v. Dylan Carpet, Inc.,* 182 A.D.2d 551, 582 N.Y.S.2d 1022, 1023–24 (N.Y.App.Div.1992).

■ Under New York law, a claim for common law fraud will not lie if that claim is duplicative of a claim for breach of contract. *See Papa's–June Music, Inc. v. McLean,* 921 F.Supp. 1154, 1160–61 (S.D.N.Y.1996) (Cedarbaum, J.); *Lind v. Vanguard Offset*

*Printers, Inc.,* 857 F.Supp. 1060, 1068 (S.D.N.Y.1994) (Sweet, J.); *Geler v. Nat'l Westminster Bank USA,* 770 F.Supp. 210, 213, (S.D.N.Y.1991) (Carter, J.). However, a claim for fraud is actionable if it is based on allegations that a party made a misrepresentation, collateral or extraneous to the contract, that induced plaintiff to enter into such contract. *See PI, Inc. v. Quality Products, Inc.,* 907 F.Supp. 752, 761 (S.D.N.Y.1995) (Koeltl, J.); *Eastman Kodak Co. v. Roopak Enterprises, Ltd.,* 202 A.D.2d 220, 608 N.Y.S.2d 445, 446 (N.Y.App.Div.1994); *RKB Enterprises. Inc. v. Ernst & Young,* 182 A.D.2d 971, 582 N.Y.S.2d 814, 816 (N.Y.App. Div.1992). While it is true that plaintiff's fraud allegations parallel its claims for breach of contract, the proposed complaint also asserts that defendants misrepresented Derek Proctor's status as an employee for NYNEX, AGS, and "NYNEX/AGS"; that he falsely led plaintiff to believe that he had full authority to contract on behalf of either company and/or the combined entity, (SAC, ¶ 51); and that plaintiff so relied on these misrepresentations, (SAC.¶¶ 17, 53). Taken together, these allegations show that plaintiff's fraud claim is not merely redundant of its contract claim.[27]

What is more, plaintiff alleges damages that are directly linked to its allegations of fraud. *See R.H. Damon & Co. v. Softkey Software Products, Inc.,* 811 F.Supp. 986, 992 (S.D.N.Y.1993) (Duffy, J.). In particular, plaintiff maintains that its reputation, good will, and business relationships have been damaged as a consequence of the defendants' purported misrepresentations regarding Mr. Proctor's authority to contract, their inducement as such to plaintiff to enter into the, contract, and plaintiff's representations in turn to its clients that it was in partnership with defendants and able to provide the services it had promised. (SAC, ¶ 56). This is distinguishable from the expected compensation plaintiff sought under the formula set

---

27. Nor is it material to plaintiff's fraud claim that the court has dismissed plaintiff's action for breach of contract. *See infra,* Part IVA. Where claims for fraud and breach of contract are distinct, the disposition of one does not affect the other. *See Hargrave v. Oki Nursery, Inc.,* 636 F.2d 897, 899 (2d Cir.1980); *Miglin,* 790 F.Supp.

at 1253; *see also Fort Howard Paper Co. v. William D. Witter, Inc.,* 787 F.2d 784, 792 (2d Cir. 1986) (observing that a party "barred by the Statute of Frauds from pursuing a breach of contract claim is not necessarily barred from pursuing an action in tort.").

forth in the partnership agreement for contracts it professed to have lost as a result of the defendants' repudiation of the agreement. (FAC, ¶¶ 13, 22).

Accordingly, plaintiff may amend its complaint to add its fraud claim against defendants.

## VI. *Discovery*

At issue in this discovery dispute is whether Magistrate Judge Bernikow erred in permitting plaintiff Four Star to inquire into defendant NYNEX's allegedly confidential business activities in China for the period 1990 through 1993. Having filed objections to Judge Bernikow's order pursuant to Rule 72(a), F.R.Civ.P., NYNEX proposes to limit disclosure of its activities to those business opportunities that plaintiff claims it first identified to NYNEX. Because this dispute involves a nondispositive matter, Judge Bernikow's order may only be reversed if it is clearly erroneous or contrary to law. See Rule 72(a), F.R.Civ.P.

 To secure a protective order, the party resisting disclosure must demonstrate that the information sought is confidential, *American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 740 (Fed.Cir.1987), and that "good cause exists for issuance of that order," *In re Agent Orange Product Liability Litigation*, 821 F.2d 139, 145 (2d Cir.1987); *accord Bayer AG and Miles, Inc. v. Barr Laboratories, Inc.*, 162 F.R.D. 456, 463–464 (S.D.N.Y.1995) (Peck, Mag. J.). Whether information is confidential "depends upon (1) the extent to which information is known outside the business; (2) the extent to which information is known to those inside the business; (3) the measures taken to guard the secrecy of the information; and (4) the value of the information to the business and its competitors." *Sullivan Marketing, Inc. v. Valassis Communications, Inc.*, No. 93 Civ. 6350, 1994 WL 177795, at *2 (S.D.N.Y.1994) (Francis, Mag. J.). A showing of good cause requires a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gelb v. American Tel. & Tel. Co.*, 813 F.Supp. 1022, 1034 (S.D.N.Y.1993) (McKenna, J.) (quoting *John Does I–VI v. Yogi*, 110 F.R.D. 629, 632

(D.D.C.1986) (citation omitted).). Once these factors are established, the burden shifts to the party requesting discovery to demonstrate that the "information is sufficiently relevant and necessary to the case to outweigh the harm disclosure would cause to the person from whom he is seeking the information." 8 Charles Alan Wright et al., *Federal Practice and Procedure* § 2043, at 559 (2d ed.1994); *accord Centurion Industries, Inc. v. Warren Steurer, Etc.*, 665 F.2d 323, 325 (10th Cir.1981).

 NYNEX has satisfactorily demonstrated that the information at the center of this dispute is valuable. At stake are the names of NYNEX's contacts in the telecommunications industry, (see Van Demark Aff. ¶ 3), as well as its appraisals of China's current economic, political, and regulatory climate, (*id.* ¶ 5); and the details of business ventures it has negotiated with the Chinese, including price, cost, and technological information, delivery schedules, and warranties, (*id.* ¶ 6–7). Without the appropriate safeguards, NYNEX asserts that all of this data—which it has procured at considerable financial cost, (*id.* ¶ 2)—would be divulged to its competitors. To avoid jeopardizing its competitive position, such information is closely guarded by the company and only revealed to NYNEX executives on a need-to-know basis. (*Id.* ¶ 2.)

NYNEX also avers that its business relationships with members of the Chinese business community might be irreparably harmed should the above information be revealed to plaintiff. It credibly argues that this community—unfamiliar with American style litigation—might discontinue its business dealings with defendant as a penalty for revealing private business discussions. (*Id.* ¶ 4.) In view of this and the above factors, defendant has shown that the information plaintiff seeks is confidential and has shown good cause for issuance of a protective order.

 In this regard, Judge Bernikow clearly erred in promulgating the Order and Amended Order, insofar as he failed to establish both relevance and necessity before permitting wide-ranging discovery into defen-

dant's business activities.[28] Nevertheless, defendant is incorrect with respect to the degree of relevance it argues must be shown. It is firmly established that the "term 'relevant' should be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Sommer v. Aronow,* No. 95 Civ. 9230, 1996 WL 399820, (S.D.N.Y. July 16, 1996), at *1 (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978)); *cf. Fletcher v. Atex, Inc.,* 156 F.R.D. 45, 48 (S.D.N.Y.1994) (Dolinger, Mag. J.) (observing that relevancy falls under a "liberal standard which encompasses any information that appears reasonably calculated to lead to the discovery of admissible evidence"). A court determines relevance by judging the relationship of the requested material to the subject matter of the action—not, as defendant insists, from gauging the nexus between the requested information and the information plaintiff claims was misappropriated. *See e.g., U.S. v. IBM Corp.,* 66 F.R.D. 180, 182 (S.D.N.Y.1974) (Edelstein, J.); 8 Wright et al., § 2008, at 99.

The information plaintiff seeks is both relevant to the subject matter of this case and necessary to its resolution of this dispute. Although the court has dismissed plaintiff's claim for breach of contract, information regarding NYNEX's business activities in China might reveal whether NYNEX used fraudulent means against plaintiff to establish or expand its business ventures in China.

Moreover, defendant has not shown—and the court is not aware—of any other means available to plaintiff for procuring this information. Accordingly, plaintiff's need for the information outweighs the harm threatened by its disclosure. *See King v. Conde,* 121 F.R.D. 180, 194 (E.D.N.Y.1988) ("[T]he availability of the [requested] information from alternative sources ... has at times been viewed as the most important of all factors" for a court to consider in deciding whether to permit discovery into a confidential matter.); *cf. ITT Electro–Optical,* 161 F.R.D. 228, 231 (D.Mass.1995) ("[I]f relevancy and need are shown, the trade secrets should be disclosed, unless they are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing.")

Nevertheless, plaintiff's need for this data does not warrant reversal of Judge Bernikow's protective order limiting discovery to counsel only. For reasons already discussed, this order is required to shelter defendant's confidential business data from possible misuse. In this regard, the court also declines to appoint an independent expert to evaluate NYNEX's private business dealings. The appointment of an independent expert, while possibly appealing in the abstract, is cumbersome in practice. *See ITT Electro–Optical,* 161 F.R.D. at 232. A protective order restricting discovery to counsel is sufficient to protect defendant's interests and a preferable means for guarding its proprietary information. *See e.g., Federal Open Market Committee v. Merrill,* 443 U.S. 340, 363, n. 24, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979) (observing that protective orders limiting disclosure are standard practice); *cf. Chesa Int'l, Ltd. v. Fashion Assocs., Inc.,* 425 F.Supp. 234, 237 (S.D.N.Y.) (MacMahon, J.) (concluding that "[u]nder a protective order, the names of customers is a proper subject for discovery."), *aff'd,* 573 F.2d 1288 (2d Cir.1977).

Because plaintiff's request to broaden the scope of discovery beyond the years 1990 through 1993 is untimely, the court declines to consider it. A party waives all objections

---

**28.** On February 10, 1995 Magistrate Judge Bernikow issued a proposed order ("Order") permitting written discovery of defendant's business ventures "in Mainland China before, during, and after the circumstances giving rise to this cause of action" to go forward. (Order ¶ 1.) While not directly finding that the disputed information was confidential, Judge Bernikow determined that it had the "potential [to] constitute protected material" and, accordingly, limited the discovery to the years 1990 through 1993. (*Id.* ¶ 2.) On a motion to reconsider, dated September 21, 1995,

Judge Bernikow affirmed his initial order but deleted the requirement that NYNEX respond to all outstanding written discovery. ("Amended Order") This amended order also deleted paragraph 1 concerning written discovery and limited discovery to counsel only. (Amended Order at 1.) This amendment effectively removed Judge Bernikow's finding of relevance regarding the requested information, also contained in paragraph 1. Both the initial and amended orders were stayed to enable the parties to file objections with the court.

to a magistrate's order that are not filed "[w]ithin ten days after being served with a copy of [such] order." *See* Rule 72(a), F.R.Civ.P. Having filed its request to extend discovery a full four months past the date of service, (*see* Pl's Certificate of Service for Pl's Mem. in Response to Def.'s Objections), plaintiff is plainly beyond the ten-day deadline.

Judge Bernikow's Amended Order is affirmed in the following respects: (1) plaintiff may proceed with discovery of defendant's business activities in China for the period 1990 through 1993; (2) the fruits of this discovery are limited to plaintiff's counsel only and may not be used by plaintiff or by plaintiff's counsel for any business or competitive purpose or divulged to any third party for the same. Both the letter and spirit of this directive are to be strictly observed and enforced.

### VII. *Conclusion*

AGS' motion to dismiss under Rule 17(a), F.R.Civ.P. is denied. Plaintiff may amend its complaint to join Keane as a defendant and to add a claim for fraud against defendants. Plaintiff's motion to add claims for misappropriation of a trade secret and unjust enrichment is denied. Plaintiff's claims against defendants for breach of contract, breach of the covenant of good faith and fair dealing, interference with existing contract, promissory estoppel, and interference with prospective economic advantage are dismissed. Plaintiff's Rule 56(f) motion on its claim for partnership by estoppel is denied with respect to AGS but granted as to defendant NYNEX. It may also proceed with the depositions of NYNEX executives Fred Salerno and Richard Blackburn and other NYNEX officials it deems relevant to this claim. Plaintiff may also proceed with discovery concerning NYNEX's business activities in China during the years 1990–1993, subject to the restrictions discussed in Part VI of this opinion.

**IT IS SO ORDERED.**